IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYSLVANIA

_____
IN re IVAN L. JEFFERY           ) Appeal – E.D. Pa. No. 23-cv-04452 -MRP
                               ) Chapter 7
_____) [Case No. 16-15037-PMM]

LYNN  E. FELDMAN,
                *Chapter 7 Trustee*

## **BRIEF FOR APPELLANT/JUDGMENT CREDITOR/PARTY IN INTEREST ARTESANIAS HACIENDA REAL S.A. de C.V. AND APPENDIX Volume 1 of 3 (Pages A-1-A-22)**

BARRY L. GOLDIN, ESQ.
*Attorney for Appellant/Judgment Creditor/Party-in-Interest*
*Artesanias Hacienda Real S.A. de C.V.*
3744 Barrington Drive
Allentown, PA  18104-1759
(610) 336-6680
barrygoldin@earthlink.net

**<u>APPELLANT'S DISCLOSURE OF CORPORATE AFFILIATIONS</u>**
**<u>AND FINANCIAL INTERESTS PURSUANT TO LOCAL RULE 8012</u>**

Pursuant to Local Rule 8012-1 of the United States Bankruptcy Court for the Eastern

District of Pennsylvania, appellant/judgment creditor/party-in-interest Artesanias

Hacienda Real S.A. de C.V. ("Artesanias") certifies as follows:

(i)     The debtor is Ivan L. Jeffery ("Debtor" or "Jeffery");

(ii)    There has been no creditors committee of Debtor Jeffery;

(iii)   According to the Claims Register in the Jeffery bankruptcy, the only holders of
        claims against Jeffery are (A) Artesanias and (B) LEPCO;

(iv)    The only entities not named in the caption which have been active participants
        in bankruptcy court proceedings giving rise to this appeal have been Appellant-
        Party in Interest Artesanias (a judgment creditor which filed for, obtained and
        holds a judgment entered in the amount of more than $923,000 against judgment
        debtor Jeffery) and Appellee Duane Morris law firm whose inflated and improper
        fee application for services purportedly rendered as counsel for the Chapter 7
        Trustee (Lynn E. Feldman, Esq.) of the Jeffery Chapter 7 Bankruptcy Estate is the
        subject of appellant Artesanias' appeal.

Respectfully Submitted,
Dated: January 19, 2024              /s/Barry L. Goldin_____
                                     BARRY L. GOLDIN, ESQ.
                                     3744 Barrington Drive
                                     Allentown, PA  18104-1759
                                     Tel: 610-336-6680   Fax: 610-336-6678
                                     Email: barrygoldin@earthlink.net
                                     *Attorney for Appellant/Party in Interest/Judgment*
                                     *Creditor Artesanias Hacienda Real S.A. de C.V.*

i

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ................................................................................................ ii

TABLE OF AUTHORITIES ........................................................................................ vi

I. INTRODUCTION ....................................................................................................... 1

II. JURISDICTION ........................................................................................................ 4

    A. Jurisdiction of the Bankruptcy Court ............................................................... 4

    B. Jurisdiction of the District Court ....................................................................... 5

III. STATEMENT OF ISSUES PRESENTED BY THIS APPEAL .................................. 5

IV. STATEMENT OF PENDING RELATED PROCEEDINGS ..................................... 6

V. STATEMENT OF THE CASE AND FACTS ............................................................. 7

    1. Artesanias' April 2016 Judgment for $923,457.87 against Debtor Ivan
       Jeffery ............................................................................................................. 7

    2. Judgment Debtor Jeffery's July 15, 2016 Chapter 7 Filing in the Reading
       Bankruptcy Court and July 18, 2016 Appointment of the Chapter 7 Trustee ............ 7

    3. Despite Jeffery's Few Listed Assets, the Chapter 7 Trustee Engaged the
       International Duane Morris Law Firm to Serve as Her Counsel for the
       Jeffery Chapter 7 Estate ................................................................................... 8

    4. The Chapter 7 Trustee and Her Counsel Duane Morris Refused to Provide
       Requested, Required Accountings during the Entire Chapter 7 Proceedings ............ 9

    5. Jeffery's Personal Counsel (Not Duane Morris) Filed a Motion against the
       Tenants, and so Obtained the Bankruptcy Court's November 6, 2016 Order
       for Turnover, of Jeffery's Pennsylvania House and Car ....................................... 9

    6. The Chapter 7 Trustee Then Sold Jeffery's Pennsylvania House and Car ................. 9

    7. Duane Morris Files and Settles Avoidance Actions against Debtor Jeffery and
       Others .............................................................................................................. 10

8. Duane Morris' Wasteful Action in the Wilton Chapter 7 Bankruptcy
Proceeding against the $30,000 Pot for Unsecured Creditors against Which
There Were Already Undisputed Proofs of Claim of Nearly $1 Million of
Other Unsecured Creditors ...................................................................................10

9. Duane Morris' Inflated July 7, 2023 "First and Final" Fee Application ................11

10. The Bankruptcy Court's Erroneous November 2, 2023 Decision and Order
Granting 98.5% of Duane Morris' Inflated Fee Application Which Is the
Subject of Artesanias' Timely-Filed Notice of Appeal ...........................................13

VI. SUMMARY OF THE ARGUMENT ...........................................................................13

VII. STANDARD OF REVIEW.........................................................................................15

VIII. ARGUMENT .............................................................................................................16

A. Applicant Duane Morris Was Required by the Bankruptcy Code to Prove That
Its Fees Constitute "Reasonable Compensation for Actual, Necessary Services
It Rendered" for the Jeffery Estate................................................................................16

1. Pursuant to 11 U.S.C. §330, the Chapter 7 Trustee's Counsel Is Allowed
Only "Reasonable Compensation for Actual, Necessary Services Rendered
by" That Counsel .........................................................................................................16

2. The Provisions of 11 U.S.C. §330 Permit Judgment Creditor Artesanias to
Challenge, and Require the Court to Disallow, Bankruptcy Attorney Fees
Which Are Not "Reasonable" or "Necessary".............................................................18

3. Applicant Duane Morris Bears the Burden of Proving That Its Fee
Application Seeks Only "Reasonable Compensation for Actual, Necessary
Services Rendered" .....................................................................................................19

4. Meanwhile in Violation of 11 U.S.C. §704 the Chapter 7 Trustee and
Duane Morris Did Not Provide Requested, Required Accountings of
Proceeds Collected and Funds Actually Held in the Chapter 7 Estate ............19

B. Duane Morris Did Not Proffer or Otherwise Provide Evidence That Its Services
Were Unavailable from Experienced Counsel in the Reading, Pennsylvania
Locality of the Bankruptcy Court ..................................................................................20

1. The Hourly Rate Payable for Services of Duane Morris Should Not Have
Exceeded the Hourly Rate of Competent, Experienced Local Counsel,
unless Duane Morris Proved Those Services Were Not Available in
that Locality of the Bankruptcy Court ............................................................20

2. The Services Rendered by Duane Morris Which Generated Proceeds to the Chapter 7 Estate Related Primarily to Sale of Debtor's Pennsylvania House and Car and Pursuit and Settlement of Avoidance Actions against Debtor Jeffery and Certain Entities to Which Debtor Jeffery Had Disbursed Funds ....................24

3. Duane Morris Provided No Admissible Evidence That Its Services Should Be Billed at a Rate Highter Than the $250 to $300 per Hour Rate Charged by Competent, Experienced Local Counsel in the Reading/Allentown Locality of the Bankruptcy Court .................................................................................................24

4.  Duane Morris Is Not Entitled to Charge an Additional Fee Rate for a "Skill Certification" as to Matters Which Could Be Competently Dealt with by a Non-Certified Experienced Attorney in the Bankruptcy Court's Locality ............27

5. Duane Morris' Fee Rate to the Chapter 7 Estate Should Be Reduced to the Hourly Rate Then Prevailing for Competent, Experienced Counsel in the Bankruptcy Court Locality Who Could Render the Services at Issue (Sale of a Pennsylvania House and Car and Filing and Pursuit of Certain Avoidance Actions against Debtor Jeffery and Others) .........................................................28

C. Duane Morris Should Not Be Awarded Compensation for Services Required to Be Rendered by and for Which a Statutory Commission Is Payable to the Chapter 7 Trustee, as Payment to Duane Morris Would Double-Dip the Costs to and Thus Deplete Funds of the Estate Otherwise Available for Distribution to Creditors ......29

1. A Chapter 7 Trustee's Attorney Is Not Entitled to Compensation for Services Required to Be Rendered by and for Which a Statutory Fee Is Instead Paid to the Trustee ...............................................................................................................29

2. Duane Morris Should Not Have Been Awarded Compensation for the Sale of the Pennsylvania House and Car Which Instead Were Required by Statute to be Dealt with by, and for Which a Statutory Fee Would Instead Be Paid to, the Chapter 7 Trustee .................................................................................................31

D. The Court Below Erroneously Failed to Deny Duane Morris' Claim for $29,000 of Fees Charged to Pursue Claims against the Wilton Estate, as It Was Evident from the Outset That, in Light of the Small Pot of Funds Available to be Recovered, the Expense of Pursuing Those Claims Would Result in a Loss to, and Thus Was Not "Reasonable" or "Necessary" for, the Jeffery Chapter 7 Estate and Its Creditors ....33

1. Duane Morris' Collection Efforts against the Wilton Estate Were Destined to Be, and In Fact Were, of *No* Benefit to the Jeffery Chapter 7 Estate and Its Creditors .............................................................................................................35

2.The Erroneous Decision of the Court Below Highlights the Disparity between, on the One Hand, the Award of Only Approximately $29,340 of Fees to the Wilton Trustee's Philadelphia Counsel for Services in Resolving the "Complex" Wilton Chapter 7 Estate and, on the Other Hand, the Nearly Eight-Times Larger $228,000 Fee Award to Duane Morris with respect to the Much Smaller and Less Complex Jeffery Estate ....................................................39

IX. CONCLUSION..........................................................................................40

CERTIFICATE OF COMPLIANCE .............................................................42

# TABLE OF AUTHORITIES

<u>Page</u>

<u>Cases</u>

*Arrowhead v. PicturePro LLC,*
2023 WL 109722 (9th Cir. 1/5/2023) ...................................................................26

*Arrowhead Capital Finance, Ltd. v. Seven Arts Entertainment, Inc.,*
739 Fed. Appx. 701 (2nd Cir. 2018) .....................................................................26

*Blum v. Stevenson,*
465 U.S. 886, 104 S. Ct. 1541 (1984) ...................................................................20

*In re ACT Mfg., Inc.,*
281 B.R. 468 (Bankr. D. Mass. 2002) ...........................................................17, 21

*In re All Island Truck Leasing Corp.,*
546 B.R. 522 (Bankr. E.D. NY 2016) ............................................................ 34-35

*In re APW Enclosure Systems, Inc.,*
2007 WL 3112414 (Bankr. D. Del. 10/23/2007) ..................................................19

*In re Blackburn,*
623 B.R. 318 (Bankr. W.D. Mich. 2020) ..............................................................23

*In re Briarpatch Film Corp.,*
281 B.R. 820 (Bankr. SDNY 2002) ......................................................................26

*In re Busy Building Centers, Inc.,*
19 F.3d 833 (3rd Cir. 1994) ...........................................................................17, 21

*In re Craig,*
651 B.R. 612 (Bankr. S. D. Alabama 2023) .........................................................32

*In re Datatec Systems, Inc. Securities Litigation,*
2007 WL 4225828 (Dist. N.J. 11/28/2007) ..........................................................21

*In re Gage,*
2022 WL 1487064 (Bankr. D.C. 5/9/2022) ..........................................................31

*In re Garcia,*
335 B.R. 717 (9th Cir. BAP 2005) .......................................................................32

*In re Gordon-Brown*,
340 B.R. 751 (Bankr. E.D. Pa. 2006) ............................................................21

*In re Jeffery*,
2019 WL 2056688 (Bankr. E.D. Pa. 5/7/2019) .............................................25

*In re Kennewick Public Hospital District*,
2018 WL 5799258 (Bankr. E.D. Wash. 10/19/2018) ................................22, 23

*In re Kern*,
2021 WL 3518806 (Bankr. D. NJ 8/10/2021) .................................................34

*In re Kusler*,
224 B.R. 180 (N.D. Okla. 1998) .....................................................................35

*In re Learning Smith, Inc.*,
247 B.R. 581 (Bankr. D. Mass. 2000) ............................................................22

*In re Lexington Heath Lamp and Leisure, LLC*,
402 B.R. 135 (M.D. N.C. 2009) .....................................................................31

*In re Meridian Group, Inc.*,
213 B.R. 455 (Bankr. D. Vermont 1997) .........................................................23

*In re Mushroom Transp. Co., Inc.*,
486 B.R. 148 (Baankr. E.D. Pa. 2013) ...........................................................34

*In re Nixon*,
400 B.R. 27 (Bankr. E.D. Pa. 2008) ...............................................................21

*In re Parkins*,
2011 WL 1167295 (Bankr. E.D. Va. 2011) .....................................................33

*In re Peterson*,
566 B.R. 179 (Bankr. M.D. Tenn. 2017) ....................................................29, 30

*In re Retail Group, Inc.*,
2022 WL 9722306 (Bankr. E.D. Va. 9/16/2022) .........................................19, 23

*In re Reynolds*,
835 Fed. Appx. 395 (10th Cir. 2021) ..............................................................34

*In re Royal Alice Properties, LLC*,
637 B.R. 465 (Bankr. E.D. La. 2021) .............................................................25

*In re Royal Alice Properties, LLC*,
2023 WL 3687437 (E.D. La. 5/26/2023) ................................................................. 25-26

*In re Taylor*,
66 B.R. 390 (Bankr. W.D. Pa. 1986) ........................................................................33

*In re Thomas*,
2023 WL 6885827 (M.D. Pa. 10/18/2023) ........................................................2, 25, 33

*In re Wilton Armetale, Inc.*,
968 F.3d 273 (3rd Cir. 2020) ...........................................................................25, 36, 37

*In re Yovtcheva*,
590 B.R. 307 (Bankr. E.D. Pa. 2018) ......................................................................30

*In re 388 Route 22 Readington Holdings LLC*,
2023 WL 4249266 (3rd Cir. 6/29/2023) ............................................................15, 16, 19

*Loughner v. Univ. of Pittsburgh*,
260 F.3d 173 (3rd Cir. 2001) ...................................................................................21

*Night Hawk Limited, v. Briarpatch Limited, L.P.*,
2003 WL 23018833 (S.D. N.Y. 12/23/2003) ..........................................................26

*Rum Creek Coal Sales, Inc. v. Caperton*,
31 F.3d 169 (4th Cir. 1994) .....................................................................................20

*Seven Arts Filmed Entertainment Ltd. v. Jonesfilm*,
538 Fed. Appx. 444 (5th Cir. 2013) ........................................................................26

*Seven Arts Pictures, Inc. v. Jonesfilm*,
512 Fed. Appx. 419 (5th Cir. 2013) ........................................................................26

*Seven Arts Pictures PLC v. Jonesfilm*,
311 Fed Appx. 962 (9th Cir. 2009) .........................................................................26

*Zolfo, Cooper & Co. v. Sunbeam-Oster Co.*,
50 F3d 253 (3rd Cir. 1995) ...........................................................................15, 16, 19, 21

Statutes and Rules

11 U.S.C. §326 ..........................................................................................................3

11 U.S.C. §330 .............................................................................................. *passim*

11 U.S.C. §523 ..........................................................................................................7

11 U.S.C. §704................................................................................... *passim*

11 U.S.C. §727...................................................................................7

28 U.S.C. §157....................................................................................4

28 U.S.C. §158 ...................................................................................5

Treatises

2A <u>Bankr. Service L. Ed</u>. §16B:77 ................................................20

2A <u>Bankr. Service L. Ed</u>. §16B:291 ..............................................29

# I. __INTRODUCTION__

Appellant/judgment creditor/party-in-interest Artesanias Hacienda Real S.A. de C.V. ("Artesanias" or "Appellant"), the principal creditor of the Jeffery Chapter 7 Estate, appeals the erroneous bankruptcy court award of approximately $230,000 of fees and expenses to Duane Morris (the Chapter 7 Trustee's law firm), as those fees were inflated, not "reasonable", and not "necessary", and so violate bankruptcy code §330.

By way of background, appellant Artesanias holds an unsatisfied judgment against judgment debtor Ivan Jeffery ("Debtor" or "Jeffery") entered in the original amount of $923,457.87 by the U.S. District Court for the Eastern District of Pennsylvania on April 29, 2016 and then recorded against Jeffery's property.   The only other Jeffery Estate creditor is LEPCO which holds a proof of claim for $87,558.37 on Jeffery's guarantee of obligations of his former company Wilton Armetale, Inc. ("Wilton")].  [A-503]

On July 15, 2016, debtor Jeffery filed his Chapter 7 Petition in the U.S. Bankruptcy Court in Reading, Pennsylvania (whose venue includes Berks, Lancaster, Lehigh and Northampton Counties).     Shortly after Jeffery's bankruptcy filing, Lynn E. Feldman, Esq. (a bankruptcy attorney with offices in Allentown, Lehigh County, Pennsylvania) was appointed Chapter 7 Trustee of Jeffery's Chapter 7 Bankruptcy Estate.

Jeffery's sworn bankruptcy Petition and related schedules averred that his assets consisted of his house and car in Berks County, Pennsylvania and several tractors and other equipment at the home to which he had relocated in Paisley Florida.

Despite Jeffery's lack of declared assets in and few creditors of his Chapter 7 estate, Trustee Feldman appointed the international Duane Morris law firm (having approximately 30 worldwide offices including Los Angeles, Miami, New York,

Philadelphia, Hanoi, London, Myanmar, Shanghai, and Singapore) to serve as her counsel in matters involving the Chapter 7 estate.

Pursuant to Bankruptcy Code 11 U.S.C. §330 and case law thereunder, Duane Morris was and is required to prove that its requested fees in the Chapter 7 proceedings were "reasonable compensation for actual, necessary services rendered", taking into account (among other things) market rates -- hourly rates for such services available from other competent, experienced local counsel in the Reading/Allentown locality of the bankruptcy court in which debtor's Chapter 7 petition was filed, the Chapter 7 Trustee maintains her offices, and the Chapter 7 case has been heard.

On July 7, 2023, Duane Morris filed its "first and final" fee application in the bankruptcy court, wherein it revealed for the first time that the Jeffery Chapter 7 Estate had collected only $464,493.59.[1]  But, Duane Morris's fee application sought fees of more than $230,000 therefrom at inflated hourly rates, nearly triple the hourly rate charged by competent, experienced local counsel in the Reading/Allentown locality.

The fees of competent, experienced local counsel in the Reading/Allentown locality were only approximately $250 per hour in 2016, increasing by 2023 to only approximately $300 per hour [A496-497 ¶¶25-26, A-613, 615, 617-625].  See the recent decision *In re Thomas*, 2023 WL 6885827 at *8 & fn. 13 (M.D. Pa. 10/18/2023), holding $295 per hour to be the proper hourly rate in Pennsylvania for a skilled bankruptcy

---

[1] Duane Morris listed those collections for the Jeffery estate as net proceeds from sale of Jeffery's former Pennsylvania house ($96,458.37) and car ($9,500.00), and from avoidance actions ($358,535.22) against Jeffery and certain entities to whom Jeffery had diverted funds prior to his bankruptcy filing [A-375 ¶¶ 10-12].

attorney having 36 years of experience.[2]  Instead, Duane Morris charged for services of its principal billing attorney, Larry Kotler Esq., an initial rate in 2016 of $715 per hour, but annually increasing by nearly 50% to $1,045 per hour by 2023 [A-378].

Moreover, although chapter 7 proceedings are intended to liquidate debtor's assets for the benefit of and distribute the proceeds to creditors, the Chapter 7 Trustee and Duane Morris now seek to disburse for their administrative fees and expenses a total of approximately $320,000 (constituting approximately 70%) of the $464,493.59 they collected for the Chapter 7 Estate – that $320,000 being the sum of (a) the inflated Duane Morris fee of more than $228,000 erroneously approved by the bankruptcy court [A-17], (b) $65,000 sought by the Trustee and approved by the bankruptcy court for fees and costs of the Trustee's accountant, and (c) the Trustee's statutory commission of $26,475.[3]

Unfortunately, the bankruptcy judge who entered the fee award was appointed after, and had no familiarity or experience with any of, Duane Morris' purported services.  The bankruptcy judge reduced Duane Morris' inflated fee request by only $3,657.50 (only an approximately 1.5% reduction) from $230,000 to $228,043.86, and so awarded to Duane Morris fees of $216,776.50 and expenses of $11,267.36 [A-17].

Artesanias appeals that fee award as that award is clearly erroneous as a matter of fact and an abuse of discretion under applicable law because (among other things):

---

[2]  Similarly, Duane Morris charged for services of its paralegal (JF Garcia) $315 per hour and for its law clerk (D. McGehrin) $305 per hour [A-305], more than triple the rate for a comparable non-lawyer (and more even than a highly-experienced attorney's hourly rate) in the Reading/Allentown locality [A496-497 ⁋⁋25-26, A-613, 615, 617-625].

[3] The Trustee's commission is calculated under 11 U.S.C. §326(a) as "25% of the first $5,000, 10% on any amount in excess of $5,000 but not in excess of $50,000, [and] 5% on any amount in excess of $50,000 but not in excess of $1,000,000 … upon all monies disbursed or turned over in the case by the trustee to parties in interest …"

(i) Duane Morris proffered no proof and so failed to sustain its burden to demonstrate that its services (with respect to sale of a Pennsylvania house and car and pursuit and settlement of avoidance actions) could not have been competently rendered by experienced local counsel billing only one-third the rate charged by Duane Morris;

(ii) Duane Morris proffered no proof and failed to sustain its burden of demonstrating entitlement to an enhanced fee rate for its purported "skill certification", as it rendered services primarily relating to sale of a Pennsylvania house and car and pursuit and settlement of avoidance actions which experienced local counsel could have rendered without any such "skill certification";

(iii) in any event, certain of Duane Morris' services were unnecessary and unreasonable because those services instead were statutorily required to be rendered by, and for which a statutory fee would be paid to, the Chapter 7 Trustee; Duane Morris' fee request thus constitutes improper duplicative charges by Duane Morris of fees payable to the Trustee; and such a duplicative payment to Duane Morris reduces the Chapter 7 estate's net proceeds for distribution to creditors; and

(iv) other of Duane Morris' services were unreasonable and unnecessary because from the outset they were foreordained to (and did) cost more than net benefits to be generated therefrom for the Chapter 7 estate and its creditors.

## II. <u>JURISDICTION.</u>

A. <u>Jurisdiction of the Bankruptcy Court</u>.  Pursuant to 28 U.S.C. §157(b)(2)(A) & (B) and 11 U.S.C. §330, the Bankruptcy Court had core jurisdiction to hear Duane Morris' fee application.

B. <u>Jurisdiction of the District Court</u>.  The District Court has jurisdiction under 28 U.S.C. §158 to hear this timely-filed November 9, 2023 appeal [A-19 through A-22] of the bankruptcy court's November 2, 2023 Opinion [A-1 through A-17] and related final and appealable Order [A-18] as to Duane Morris' fee application.

### III. <u>STATEMENT OF ISSUES PRESENTED BY THIS APPEAL</u>.

Whether as required by 11 U.S.C. §330, the fees sought by and awarded to Duane Morris were "reasonable compensation for actual, necessary services rendered"?

*Subsidiary Issues:*

1. Whether Duane Morris failed to sustain its burden of proving its hourly rates charged for its purported services (relating to sale of a Pennsylvania house and a car and pursuit and settlement of avoidance actions) were "reasonable and necessary", as Duane Morris proffered no evidence disputing and so implicitly conceded (and the court below improperly ignored as a matter of fact and law) that those services could have been rendered by competent, experienced local counsel at approximately one-third the hourly rates and thus one-third the approximately $230,000 charged by Duane Morris.

*Issue presented [A-5-6, 462, 470-471], erroneously decided [A-14-16]*

2. Whether any purported "skill certification" justified the inflated hourly rates charged by Duane Morris, as it did not even attempt to sustain its burden of proof (which the court below improperly ignored as a matter fact and law) that its services rendered (in connection with sale of a Pennsylvania house and car and pursuit and settlement of avoidance actions) required any such "special skill" beyond the ordinary competence of experienced local counsel?

*Issue presented [A-5-6, 462, 470-471], erroneously decided [A-11-16]*

3.   Whether Duane Morris fees were "reasonable and necessary" for services the Chapter 7 Trustee (herself an attorney) was statutorily required to perform, relating to sale of a Pennsylvania house and a car; the court below erroneously ignored that Duane Morris' rendering of such services was duplicative of services the Trustee was required to render and for which the Trustee would receive a set statutory commission; and thus payment of duplicative fees to Duane Morris for such services constitutes impermissible double-dipping thereby reducing the estate available for distribution to creditors?

*Issue presented [A-4, 463-464, 468], erroneously decided [A-11-12]*

4. Whether Duane Morris fees relating to its action against debtor Jeffery's former affiliate Wilton were "reasonable and necessary" as it was evident from the outset, but Duane Morris and the court below erroneously ignored, that those Duane Morris services would not yield a net benefit to the estate and its creditors -- as the limited funds which the Wilton estate had available to distribute to unsecured creditors were already subject to undisputed proofs of claims for nearly $1 million, and Duane Morris' services and related fees would yield no net benefit, but rather result in net loss, to the Jeffery Chapter 7 estate and its creditors?

*Issue presented [A-4-5, 468-469], erroneously decided [A-12-13]*

## IV. <u>STATEMENT OF PENDING RELATED PROCEEDINGS</u>.

Artesanias has a pending appeal in the U.S. District Court for the Eastern District of Pennsylvania (appeal no. 23-cv-02406 before Honorable Kai N. Scott) of the bankruptcy court's June 8, 2023 post-trial opinion and order entered in Artesanias' adversary action against Ivan Jeffery (17-028-PMM).  In that appeal, Artesanias' argues the bankruptcy court erroneously dismissed Artesanias claims seeking to deny judgment debtor Jeffery

discharge under Bankruptcy Code §727(a)(4)(A)(First Count), §727 (a)(2) (A) & (B) (Second Count), and §§727 and 523(a)(6) (Fifth Count).  That appeal has been fully briefed in and awaits decision of the District Court.

Artesanias is not aware of any other proceedings which if decided may be relevant to issues presented by this appeal (no. 23-cv-4452) and not duplicative of cases cited in appellant's brief.

## V. <u>STATEMENT OF THE CASE AND FACTS</u>.

1. <u>Artesanias' April 2016 Judgment for $923,457.87 against Debtor Ivan Jeffery.</u>

Judgment creditor/appellant Artesanias sought and during April 2016 obtained entry of its judgment against judgment debtor Jeffery from the U.S. District Court for the Eastern District of Pennsylvania in the amount of $923,457.87, and then recorded that judgment against property in which Jeffery held an interest [A-503, 506-525].

2. <u>Judgment Debtor Jeffery's July 15, 2016 Chapter 7 Filing in the Reading Bankruptcy Court, and July 18, 2016 Appointment of the Chapter 7 Trustee.</u>

On July 15, 2016, judgment debtor Jeffery, who purported to be a resident of Berks County, Pennsylvania, filed his voluntary Chapter 7 Petition in the Reading division of the Bankruptcy Court for the Eastern District of Pennsylvania.  His bankruptcy Petition and schedules reported that he only owned a house and car in Pennsylvania (which he was renting to Christopher Balthaser and Wendy Castor), and less valuable personal property (several tractors and a tree saw) at the home to which he had relocated in Florida. [A-23-24, 68 (¶8), 73-81, 99].

On July 18, 2016, Lynn E. Feldman, Esq. (a bankruptcy attorney located in Allentown, Lehigh County, Pennsylvania) was appointed Chapter 7 of Jeffery's bankruptcy estate [A-24].

3. Despite Jeffery's Few Listed Assets, the Chapter 7 Trustee Engaged the International Duane Morris Law Firm to Serve as Her Counsel for the Jeffery Chapter 7 Estate.

   Prior to the Jeffery bankruptcy, Chapter 7 Trustee Feldman had a relationship with and been represented in other matters by Duane Morris law (an international law firm having approximately 30 worldwide offices including Los Angeles, Miami, New York, Philadelphia, Hanoi, London, Myanmar, Shanghai, and Singapore [A-384]).   Trustee Feldman so engaged Duane Morris to serve as her counsel with respect to the Jeffery Chapter 7 estate.  [A-52-58]

   Duane Morris' engagement contemplated that its bankruptcy partner Larry Kotler, would charge an initial hourly billing rate of $715 per hour [A-66].

   Although the bankruptcy court's September 8, 2016 Order approved engagement of Duane Morris [A-500 through A-501], the bankruptcy court explicitly retained in that Order the power to determine (and so reduce) the amount payable for Duane Morris' services.  That Order so explicitly states [A-501]:

   "3. ORDERED that compensation shall be paid to Duane Morris LLP as an administrative expense **in such amounts as the Court may hereafter determine and allow**."  [emphasis added].

   After Duane Morris' engagement, attorney Kotler's billing rate increased annually, so that by 2023 his billing rate had increased by nearly 50% (substantially more than the rate of inflation) to $1,045 per hour [A-378].

8

4. <u>The Chapter 7 Trustee and Her Counsel Duane Morris Refused to Provide Requested, Required Accountings during the Entire Chapter 7 Proceedings.</u>

The Trustee and her counsel were required by 11 U.S.C. §704 to provide periodic accountings to the bankruptcy court and creditors.[4]   Artesanias (which holds its undisputed proof of claim for its more than $923,000 judgment against and thus has been principal creditor of debtor Jeffery and Jeffery's Chapter 7 estate) repeatedly requested, but the Trustee and Duane Morris refused to provide, an accounting of collections by and funds held in Jeffery's Chapter 7 estate [A-115-116, 172:3-5, 495 (¶24), 598-599 (¶O)]. The Trustee and her counsel Duane Morris do not deny (and so implicitly concede) they refused Artesanias' requests for an accounting of collections and funds held.

5. <u>Jeffery's Personal Counsel (Not Duane Morris) Filed a Motion against the Tenants, and so Obtained the Bankruptcy Court's November 6, 2016 Order for Turnover, of Jeffery's Pennsylvania House and Car</u>.

After Jeffery's bankruptcy filing, his personal counsel the Leisawitz Heller law firm (not Duane Morris) filed on October 12, 2016 a motion in the bankruptcy court to obtain tenants' turnover of Jeffery's Pennsylvania house and car [A-67 through A-97]; that motion was unopposed [A-98]; and the bankruptcy court so entered its November 6, 2016 Order requiring turnover of both the house and the car [A-99 through A-101].

6. <u>The Chapter 7 Trustee Then Sold Jeffery's Pennsylvania House and Car</u>.

After debtor's personal counsel (the Leisawitz Heller law firm) had so obtained turnover of the house and car, they were sold by the Chapter 7 Trustee, who reports

---

[4] 11 U.S.C. §704(a) states "The trustee shall – (1) collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest; (2) be accountable for all property received; … (7) … **furnish such information concerning the estate and the estate's administration as is requested by a party in interest;** …", [emphasis added]

receiving a net recovery of $96,458.37 for debtor's Pennsylvania house and $9,500.00 for

debtor's Pennsylvania car [A-375 ¶¶ 11-12].

7. Duane Morris Files and Settles Avoidance Actions against Debtor Jeffery and Others.

Approximately a year later (in October 2017), the Trustee sought approval from the

bankruptcy court for Duane Morris to pursue avoidance actions under the bankruptcy

code against debtor Jeffery and certain of the entities to whom Jeffery had disbursed

funds.   Artesanias' gave notice that the Trustee and Duane Morris were refusing to

provide any information, documents or accounting and objected that Duane Morris'

continuing fees were too costly for the benefits to be achieved [A-102 through 117, A-

172:14-173:25].  Although Bankruptcy Judge Fehling permitted Duane Morris to file and

pursue those adversary actions, Judge Fehling warned and reminded [A-172:21-25]:

> "if they [Duane Morris] spend an inordinate amount of money, .… you
> [Artesanias] will be able to raise that point later … You're not foreclosed for
> [from] objecting to their fee obviously."'

In fact, none of the adversary cases brought by Duane Morris went to trial; Duane Morris

admits settling and collecting only $358,535.22 from certain of those adversary actions;

and it dismissed the other actions without any recovery [A-375 ¶10].

8. Duane Morris' Wasteful Action in the Wilton Chapter 7 Bankruptcy Proceeding
against the $30,000 Pot for Unsecured Creditors against Which There Were Already
Undisputed Proofs of Claim of Nearly $1 Million of Other Unsecured Creditors.

During March 2017, Duane Morris also filed for the Jeffery estate a claim against

Jeffery's bankrupt former company Wilton -- although Wilton then had only

approximately $30,000 [A-544 ¶3(c)] to pay nearly a million dollars of already-filed

creditor claims (including Artesanias' proof of claim on its federal court judgment against

Wilton for more than $920,000) [A-540, 559].

Artesanias delivered to the bankruptcy court an October 17, 2017 letter pointing out that Artesanias held a more than $923,000 judgment (and so more than 90% of the claims) against the Jeffery Chapter 7 estate and a more than $920,000 judgment (94% of the claims) against the Wilton Chapter 7 estate [A-503, 557-559].

Duane Morris then negotiated, and the bankruptcy court "so ordered", a settlement with Artesanias, under which Artesanias would be paid directly 75% of any Jeffery estate recovery from the Wilton estate [A-209-212. 216-217] -- although those very monies would otherwise have been payable to Artesanias directly from the Wilton estate on Artesanias' more than $920,000 judgment against Wilton [A-557 through A-559].

Pursuant to that settlement, $16,718.72 (i.e. 75%) of the $22,291.62 collected on the Jeffery estate claim against the Wilton estate was directly paid to Artesanias [A-216-217] -- although that $16,718.72 is less than the 90% distribution Artesanias would otherwise have been paid directly from the Wilton estate without Duane Morris' interference -- leaving a net collection to the Jeffery estate of only $5,572.90.   But to collect that $5,572.90 for the Jeffery estate, Duane Morris charged the Jeffery estate $28,913.50 [A479-487 (Schedule S-3)], so resulting in a foreordained net loss and diminishing the amount available for distribution by the Jeffery estate to the Jeffery's two creditors by at least $23,440.60 (the $28,913.50 Duane Morris fees minus the $5,572.90 net collection).

9. Duane Morris' Inflated July 7, 2023 "First and Final" Fee Application.

At the time a Chapter 7 trustee's attorneys submit a fee application to the bankruptcy court, they are required by 11 U.S.C. §330 to concurrently serve that fee application upon and for review of creditors and other parties in interest; if the fee application is opposed, the bankruptcy court is required to hold a hearing thereon; and the bankruptcy

court must then disapprove or otherwise reduce the fee application at least insofar as the requested fees do not constitute "reasonable compensation for actual, necessary services rendered by" the applicant attorneys.

On July 7, 2023 Duane Morris' filed its "first and final fee" application in which it admits collecting only the above-described sum of $470,065 for the Chapter 7 Estate, but from which it sought for itself fees and expenses of $231,267.36 (consisting of $220,000 of fees and $11,267.36 of expenses) [A-373 *et seq*.].   Those fees and expenses, together with fees of $65,000 previously awarded to the estate's accountant, and the $27,500 statutory fees of the Trustee [see fn. 3 above], would consume a total of more than $323,000 (and thus approximately 70%) of the $470,065  purportedly collected and held in the Jeffery bankruptcy estate, and so would thereby substantially reduce the amount of the Jeffery bankruptcy estate remaining available for distribution to the estate's two creditors (Artesanias and LEPCO).

On July 28, 2023, the Chapter 7 Estate's principal creditor Artesanias filed objections, an Affidavit, and supporting exhibits, in which Artesanias opposed Duane Morris' fee application as inflated, unreasonable, and unnecessary and thus in violation of Bankruptcy Code 11 USC §330 [A-459 *et seq*.].   Artesanias also pointed out therein that the Chapter Trustee and Duane Morris still had not provided any accounting with respect to the Chapter 7 estate and the funds held therein [A-495 ⁋24].

Duane Morris filed an August 17, 2023 Reply, but again without any supporting affidavit, declaration or other admissible evidence [A-627 *et seq*.].

 Accordingly, Artesanias on August 18, 2023 filed an Objection highlighting Duane Morris's continuing failure to provide a proper accounting; that Duane Morris' inflated

12

fee application was not supported by required admissible evidence; and that Duane Morris' fee application improperly asserted purported "facts" that were actually belied by orders, agreements, transcripts, and other filed documents, including (among others) the transcript of the bankruptcy court's January 6, 2017 proceedings [A-737 & 738].

10. The Bankruptcy Court's Erroneous November, 2, 2023 Decision and Order Granting 98.5% of Duane Morris' Inflated Fee Application Which Is the Subject of Artesanias' Timely-Filed Notice of Appeal.

On August 22, 2023, the bankruptcy court held a hearing on Duane Morris' fee application and Artesanias' objections thereto [transcript at A-739 *et seq.*].

Following that hearing, the bankruptcy court entered its November 2, 2023 Opinion and Order wherein (as described below) it erroneously overruled Artesanias' objections; erroneously reduced Duane Morris's inflated application by only $3,657.50 (an approximately 1.5% reduction of Duane Morris' inflated $230,000 fee and expense request); and so erroneously awarded Duane Morris fees and expenses of $228,043.86 (consisting of fees of $211,776.50 and expenses of $11,267.36) [A-1 through A-18].

On November 9, 2023, Artesanias timely filed its Notice of Appeal of the bankruptcy court's erroneous November 2, 2023 Opinion and Order [A-19-22], that are the subject of this Opening Brief.

## VI. SUMMARY OF THE ARGUMENT.

*A.* Pursuant to 11 U.S.C. §330, the Chapter 7 Trustee's counsel is allowed only "Reasonable Compensation for Actual, Necessary Services Rendered by" that counsel. Applicant Duane Morris bears the burden of proving that its fee application seeks only "Reasonable Compensation for Actual, Necessary Services Rendered". Moreover, 11

U.S.C. §330 permits judgment creditor Artesanias to challenge, and require the court to disallow, bankruptcy attorney fees which Are not "Reasonable" or "Necessary".

Meanwhile in violation of 11 U.S.C. §704, the Chapter 7 Trustee and Duane Morris did not provide the required accountings of proceeds collected and funds actually held in the Chapter 7 Estate.

*B*. The services rendered by Duane Morris which generated proceeds to the Chapter 7 Estate related to sale of debtor Jeffery's Pennsylvania house and car and pursuit and settlement of avoidance actions against Jeffery and certain entities to which Jeffery had disbursed funds.

The hourly rate payable for services of Duane Morris should not exceed the hourly rate of competent, experienced local counsel in the Bankruptcy Court's locality, unless those services are not available in that locality.  In the case at hand, Duane Morris provided no such evidence that such local competent, experience local counsel was unavailable or that Duane Morris' services should be billed at a rate higher than the $250 to $300 per hour rate charged by such local counsel in the locality of the Reading bankruptcy court in which Debtor Jeffery's bankruptcy petition was filed, the Chapter 7 Trustee's office is located, and the bankruptcy case was heard.

Moreover, Duane Morris is not entitled to charge an additional fee rate for any "Skill Certification" as to matters for which that "Skill" was not required.

Thus, Duane Morris' fee rate to the Chapter 7 Estate should be reduced to the hourly rate then prevailing for competent, experienced counsel in the locality who could render the services at issue (sale of a Pennsylvania house and car and filing and pursuit of certain avoidance actions against Debtor Jeffery and others).

14

*C.*  Duane Morris should *not* be awarded compensation for services required to be rendered by and for which a statutory commission is payable to the Chapter 7 Trustee, as payment to Duane Morris would double-dip the costs to and thus deplete funds of the Chapter 7 Estate otherwise available for distribution to creditors.

*D.* The court below erroneously failed to deny Duane Morris' claim for $29,000 of fees charged to pursue claims against the Wilton Estate, as it was evident from the outset that, in light of the small pot of funds available to be recovered, the expense of pursuing those claims would result in a net loss to, and thus was not "Reasonable" or "Necessary" for, the Jeffery Chapter 7 Estate and creditors.

In fact, Duane Morris' collection efforts against the Wilton Estate did result in a net loss to the Jeffery Chapter 7 Estate and *no* net benefit to the Jeffery Chapter 7 Estate's two creditors (Artesanias and LEPCO).

Rather, the erroneous decision of the Court below highlights the disparity between, on the one hand, the award of only approximately $29,340 of fees to the Wilton Trustee's Philadelphia counsel for services in resolving the "Complex" Wilton Chapter 7 Estate and, on the other hand, the nearly eight-times larger $228,000 fee award to Duane Morris with respect to the much smaller and less complex Jeffery Estate.

## VII. <u>STANDARD OF REVIEW.</u>

In reviewing a bankruptcy court decision as to an attorney's fee application, the District Court exercises plenary review over legal conclusions and reviews factual findings for clear error.  *See In re 388 Route 22 Readington Holdings LLC*, 2023 WL 4249266 (3rd Cir. 6/29/2023), citing *Zolfo, Cooper & Co. v. Sunbeam-Oster Co.*, 50 F3d 253, 257 (3rd Cir. 1995).  Fee awards are so reviewed for abuse of discretion, which

occurs if the bankruptcy judge failed to apply proper legal standards or to follow proper procedures in making the determination or based an award upon clearly erroneous findings of fact. *Id.*

The fee applicant (Duane Morris) bears the burden of proving its entitlement to the requested fees, including proving that the requested fees were "reasonable compensation for actual, necessary services rendered by" it.   On appeal, the burden may shift to appellant to demonstrate the bankruptcy court abused its discretion.  *In re Readington Holdings, supra* at *4, citing *Zolfo Cooper, supra*, 50 F.3d at 261.

However, deference to the bankruptcy court's fee award should be lessened where (as in the case at hand) the award was issued by a newly-assigned bankruptcy judge who had no experience as to and was not familiar with the matters as to which the fee award was sought; the fee award was not properly supported by an affidavit, declaration, or other admissible evidence required to sustain applicant's burden of proof; and the bankruptcy judge again ignored key documents and other evidence in the record.

## VIII. <u>ARGUMENT.</u>

A. <u>Applicant Duane Morris Was Required by the Bankruptcy Code to Prove That Its Fees Constitute "Reasonable Compensation for Actual, Necessary Services It Rendered" for the Jeffery Estate.</u>

1. <u>Pursuant to 11 U.S.C. §330, the Chapter 7 Trustee's Counsel Is Allowed Only "Reasonable Compensation for Actual, Necessary Services Rendered by" That Counsel.</u>

Chapter 7 Trustee-administered liquidations of debtor assets are supposed to yield an efficient, timely disposition of debtor's assets and disbursement of proceeds to debtor's creditors.  Instead, there have been repeated complaints that bankruptcy cases (including Chapter 7 Trustee-administered liquidations) are viewed as "a cash cow" for

professionals and in particular a "feeding trough for attorneys", *In re ACT Mfg., Inc.*, 281 B.R. 468 at fn. 2 (D. Mass. 2002) (reducing fees of debtor's attorneys).

The excess fee problem arises in part because the Chapter 7 Trustee does not have the same economic incentives as a true "owner" to lessen costs.[5]  Rather, the Chapter 7 Trustee, who by law is paid a fixed statutory percentage of all proceeds to be disbursed (whether to professionals or to creditors), has little incentive to challenge the fee application of the law firm and other professionals she chose in the first place and with whom she has other relationships.  For instance, the Trustee in the case at hand admitted to being previously so represented by Duane Morris "in numerous cases before this [Bankruptcy] Court" [A-54 ⁋8].

Likewise, the Chapter 7 Trustee's attorneys, who report to "non-owner" Chapter 7 Trustee, have little incentive to act with utmost economy for the bankruptcy estate, so long as the estate has sufficient proceeds to pay, and other parties in interest are not likely to raise a hue and cry as to, the attorneys' fees.

Moreover, other law firms are not likely to object to an inflated fee application as they instead avoid triggering retaliation or reciprocal opposition which would jeopardize their own fee applications in the same or other bankruptcy proceedings.

Accordingly, the party-in-interest most likely to object to the Chapter 7 Trustee attorneys' excess fee application is an estate creditor (such as judgment creditor Artesanias) having a sufficiently-large financial interest and incentive to incur the cost of challenging the inflated or improper fee request – as each dollar wasted by the Chapter 7

---

[5] Reversing and remanding a fee award, the Third Circuit observed *In re Busy Building Centers, Inc*., 19 F.3d 833, 842-843 (3rd Cir. 1994), that the legal market functions imperfectly in bankruptcy, as the debtor 'client' and other interested parties are often unable or unwilling to contest the fees charged.

trustee and her professionals is a dollar less for distribution to creditors.  In the case at hand, Artesanias holds its proof of claim for its unsatisfied proof of claim and more than $923,000 federal court judgment against debtor Jeffery and Jeffery's bankruptcy estate; the only other creditor LEPCO filed a proof of claim for approximately $87,000; and thus each $1.00 of excess fees to the Chapter 7 trustee's attorneys would reduce funds for distribution to Artesanias by nearly 92 cents and to LEPCO by nearly 8 cents [A-503].

2. <u>The Provisions of 11 U.S.C. §330 Permit Judgment Creditor Artesanias to Challenge, and Require the Court to Disallow, Bankruptcy Attorney Fees Which Are Not "Reasonable" or "Necessary".</u>

As a matter of law, 11 U.S.C. §330(a)(1) requires applicant (Duane Morris) to serve its fee application on creditors so they may review the fee application and object thereto;[6] §330(a)(2) permits the court on motion of a creditor or other party in interest to reduce the requested compensation;[7] §330(a)(3) requires the court to consider and take into account "all relevant factors" in determining the professional's hourly rate, time charges, and the amount of fees to be awarded;[8] and §330(a)(4) further requires that the "**court**

---

[6] §330(a)(1):  "After notice to the parties in interest and the U.S. Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to  a … professional person employed under section 327(A) reasonable compensation for actual, necessary services rendered by the … attorney and by any paraprofessional person employed by any such person; and (B) reimbursement for actual, necessary expenses."

[7] §330(a)(2): "The court may, on its own motion or the motion of … any … party in interest, award compensation that is less than the amount of compensation that is requested."

[8] §330(a)(3):  In determining the amount of **reasonable compensation** to be awarded to an … professional person, the court shall consider the **nature, extent, and the value of such services**, taking into account all relevant factors, including (A) the time spent on such services; (B) the rates charged for such services; (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title; (D) whether the services were performed within a reasonable amount of time; (E) … whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and (F) **whether the compensation is reasonable** based on the customary compensation

**shall not allow compensation for unnecessary duplication of services, or services that were not reasonably likely to benefit the debtor's estate, or services not necessary to administration of the bankruptcy case.**" [emphasis added]

3. Applicant Duane Morris Bears the Burden of Proving That Its Fee Application Seeks Only "Reasonable Compensation for Actual, Necessary Services Rendered".

A fee applicant (Duane Morris) bears the burden of proving its entitlement to requested fees, including proving that its requested fees are "reasonable compensation for actual, necessary services rendered by applicant", *In re Readington Holdings, supra* at *4, citing *Zolfo Cooper & Co. v. Sunbeam-Oster Co.,* 50 F.3d at 261.   In so disallowing part of a Duane Morris final fee application, *In re APW Enclosure Systems, Inc.,* 2007 WL 3112414 at *2 (Bankr. D. Del. 10/23/2007), reiterated that:

> "The burden to show the value of the services provided rests with the applicant. *Zolfo, Cooper supra* at 261; *Spanjer Bros.,* 203 B.R. at 89-90."

Recently, *In re Retail Group, Inc*., 2022 WL 9722306 at *9 (Bankr. E.D. Va. 9/16/2022), likewise repeated that "The burden of proving what constitutes reasonable compensation is on the party seeking compensation".

4. Meanwhile in Violation of 11 U.S.C. §704 the Chapter 7 Trustee and Duane Morris Did Not Provide Requested, Required Accountings of Proceeds Collected and Funds Actually Held in the Chapter 7 Estate.

Despite 11 U.S.C. §704's requirement that the Chapter 7 Trustee and her counsel provide accountings requested by parties in interest (such as debtor's principal creditor Artesanias), neither the Chapter 7 Trustee nor her counsel Duane Morris filed with the Court or provided creditor Artesanias any accounting of collections or funds held by the Chapter 7 estate [A-115-117, 172:3-5, 598-599 ¶(O), 495 (¶24)].   Presumably they never

---

charged by comparably skilled practitioners in cases other than cases under this title."
[emphasis added]

provided the required accounting because they were embarrassed at seeking to charge so much (fees totaling approximately $330,000) for accomplishing so little (collecting only approximately $424,000), particularly as their fees would constitute nearly 70% of the estate's collections.

Unfortunately, the court below erroneously ignored that Artesanias had made repeated requests for, but the Chapter 7 Trustee and her counsel Duane Morris never provided, any accounting of funds collected by and held in the Chapter 7 estate.

B. Duane Morris Did Not Proffer or Otherwise Provide Evidence That Its Services Were Unavailable from Experienced Counsel in the Reading, Pennsylvania Locality of the Bankruptcy Court.

1. The Hourly Rate Payable for Services of Duane Morris Should Not Have Exceeded the Hourly Rate of Competent, Experienced Local Counsel, unless Duane Morris Proved Those Services Were Not Available in that Locality of the Bankruptcy Court.

As described in *Blum v. Stevenson,* 465 U.S. 886, 895-896, 104 S. Ct. 1541 (1984), a court's award of reasonable attorney fees is "to be calculated according to the prevailing market rates in the relevant community" [citing its fn. 11]. In that footnote 11, the Supreme Court further reminded that the fee applicant must produce its own affidavit and other satisfactory evidence that its requested rates "are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation". Likewise, *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994) ruled that the relevant market for determining the prevailing hourly rate is ordinarily the community in which sits the court presiding over the action.

Similarly, 2A Bankr. Service L.Ed. §16B:77 reports with respect to compensation of bankruptcy attorneys that:

> "The rate of compensation for legal services under 11 U.S.C.A. §330 should be based on the cost of such services in the community, area or district in which the services are rendered."

So reversing and remanding an attorney few award *In re Busy Building Centers, Inc*., *supra*, the Third Circuit observed, 19 F.3d (at fn.35) that:

> "A run-of-the mill bankruptcy case does not warrant the lofty fees of nationally-renowned law firms, *see, In re Vogue*, 92 B.R. at 718, and a reasonable debtor concerned with the economical administration of the estate in such a case would refrain from retraining over-qualified counsel.  In other words, the reasonable hourly rate has a cap based on the expected and actual complexity of the case, a cap which, while flexible, should stave off clear abuses.  *Compare In re Waldoff's Inc*., 132 B.R. 329, 335 (Bankr. S.D. Miss. 1991) (substantially reducing out-of-state law counsel's fees to match prevailing local rates because the complexities of the case did not warrant retention of a law firm charging counsel's requested rates) and *In re Casull,* 139 B.R. 525, 528 (Bankr. D. Colo. 1992) (reducing fees found excessive 'considering the nature and complexity of the issues dealt with")"

Likewise, in *Zolfo, Cooper supra, at* 260, the Third Circuit observed that routine tasks, if performed by senior partners in large firms, should *not* be billed at their usual rates; "A Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn"'; and it may be concluded a party "did not need top-flight counsel in a no-brainer case" [Id. at fn. 4].[9]

In so reducing fees of bankruptcy counsel, the court ruled *In re ACT Mfg., Inc*., 281 B.R. 468, 486-487 (D. Mass 2002), that:

---

[9] *See also In re Nixon*, 400 B.R. 27, 39 (Bankr. E.D. Pa. 2008), observing that "A reasonable rate is the prevailing market rate in the relevant community.  *Loughner v. Univ. of Pittsburgh,* 260 F.3d 173, 180 (3rd Cir. 2001)."  The *Nixon* court so reduced the fee charged in a bankruptcy case from $275 to $200 per hour, citing Bankruptcy Judge Frank's decision, *In re Gordon-Brown*, 340 B.R. 751, 759 (Bankr. E.D. Pa. 2006), which held $200 was "a reasonable hourly rate" for an attorney in a bankruptcy matter.

Likewise, *see In re Datatec Systems, Inc. Securities Litigation*, 2007 WL 4225828 (Dist. N.J. 11/28/2007) court approves a fee award of 30% of amount recovered, which (at *8) is in the range of other fee awards for settled cases within the Third Circuit, citing *In re Rite Aid Corp. Sec. Litig*., 396 F.3d 294 at 306-307 (3rd Cir. 2005).

"**the Court should apply the rate customarily charged for similar services in the locality and should depart from the local rate only when the case required expertise not locally available.** … Out of town professionals, whether they are located in Boston, New York, or elsewhere, have a responsibility to investigate whether the use of local counsel for some tasks would benefit the estate and, if so, to seek engagement of local professionals." [emphasis added]

That decision cited *In re Learning Smith, Inc.*, 247 B.R. 581, 582 (Bankr. D. Mass. 2000), which reduced fees of the Hughes Hubbard law firm ("HHR"), as:

"HHR acknowledging that its rates are in part a function of the locality in which it practices, argues that its rates should nonetheless be deemed reasonable because (1) partners' rates in some large and highly regarded Boston firms may equal or exceed those of HHR, a large and highly regarded New York firm, and (2) its hiring counsel, the Creditors' Committee chose HHR for its experience in the Debtor's industry and for that reason was comfortable with the firm's rates. However, HHR did not specify the industry in question and did not indicate what experience or expertise it had in that industry. **More importantly, the firm did not state whether its expertise was unusual or not readily available in this less expensive locality; nor did the firm explain how this case required that expertise** …

 … the governing law [is] that **the Court should apply the rate customarily charged for similar services in the locality and should depart from the local rate only where the case required expertise not locally available.** *Calhoun v. Acme Cleveland Corp.,* 801 F.2d 558, 560 (1st Cir. 1986); *In re Narragansett Clothing Co*., 210 B.R. 493, 498 (1st BAP 1997). … HHR brought no special expertise to this case that the local bar could not have provided. … the case required only ordinary competence in Chapter 11 work, … abundantly available in this area for $370 per hour and less." [emphasis added]

Likewise, substantially reducing fees requested by the national Arent Fox law firm, *In re Kennewick Public Hospital District,* 2018 WL 5799258 (Bankr. E.D. Wash. 10/19/2018) observed that "Barring special circumstances, courts may limit attorney fees to the local, prevailing rates [citations omitted] (at *2); "many of the issues actually handled by Arent Fox consisted of routine legal issues that did not require specialized knowledge and experience" (at *5); "local attorneys could have performed some of the services at rates lower than Arent Fox's guideline rates" (at *7); and Arent Fox's Fee Application **did not identify with particularity evidence that would support the**

**conclusion that this case was uniquely complex or include details that reveal specialty services were required**, as most of the time was spent litigating an issue involving local real estate and trust law (at *7). [emphasis added]

*See also In re Blackburn*, 623 B.R. 318, 321 (Bankr. W.D. Mich. 2020) observing that the mean hourly rate for bankruptcy counsel in its locality ranged from $235 to $279 per hour, and so reducing the hourly rate of bankruptcy counsel (who practiced for 22 years and spoke at bankruptcy educational seminars) to $250 rather than $300 per hour.

At issue *In re Meridian Group, Inc*., 213 B.R. 455 (Bankr. D. Vermont 1997) was the hourly rate of the Chapter 7 Trustee's counsel, who previously had won million-dollar settlements in national cases, but then relocated from Philadelphia to Vermont; he achieved a settlement of only $450,000 in the Vermont bankruptcy case at issue; but he sought fees at his Philadelphia (rather than a Vermont) rate.  In reducing his fees to the $125 rate prevailing for bankruptcy practitioners in Vermont, the court stated (at 457):

> "We want to welcome special counsel recently relocated from Philadelphia …
> To summarize, Meridian [Chapter 7 debtor] is a Vermont case.  It's in a Vermont Court, the complexities are fully within the competence of members of the Vermont bar, and we see, on the record before us, no reason why new immigrants should be entitled to a premium because they are from somewhere else."

In short, a higher (than local) hourly fee may be awarded to a national or international law firm only insofar as it first sustains its burden of proving the specific services rendered were not available in the community where the bankruptcy court sits.   For instance, *In re Retail Group, Inc*., 2022 WL 9722306 (Bankr. E.D. Va. 9/16/2022), the international Cooley law firm's application (for fees exceeding the hourly rate in the court's Richmond locality) was granted because Cooley had the capability to and did send the large number of notices and perform the complicated administrative tasks

required in the large Chapter 11 bankruptcy proceeding of debtor public company involving many vendors, creditors and other parties of interest; Cooley's services related to (among other things) Canadian tax filings, asset transfers from foreign accounts, and dissolution of foreign entities (at *6); and Cooley's "expertise in bankruptcy, tax, litigation and corporate law was integral to effective resolution of the array of complex legal issues presented" (at *15).

2. <u>The Services Rendered by Duane Morris Which Generated Proceeds to the Chapter 7 Estate Related Primarily to Sale of Debtor's Pennsylvania House and Car and Pursuit and Settlement of Avoidance Actions against Debtor Jeffery and Certain Entities to Which Debtor Jeffery Had Disbursed Funds.</u>

As described in Duane Morris' application to and filings with the Bankruptcy Court, the services purportedly rendered by Duane Morris related primarily to the Chapter 7 Trustee's sale of debtor Jeffery's Pennsylvania house and car and adversary actions against Jeffery and others which Duane Morris settled without trial [A-375 ¶¶10-12].

Duane Morris has not identified any complex tax, securities, foreign law, or other issue which it was required to or did render for the Chapter 7 Estate. Rather, much of the legal research charged by Duane Morris relates to a proceeding against Jeffery's revocable trust [A-442], which Duane Morris and the Chapter 7 Trustee never pursued.

3. <u>Duane Morris Provided No Admissible Evidence That Its Services Should Be Billed at a Rate Highter Than the $250 to $300 per Hour Rate Charged by Competent, Experienced Local Counsel in the Reading/Allentown Locality of the Bankruptcy Court.</u>

This Chapter 7 proceeding of the Jeffery bankruptcy estate was relatively simple. There are only two creditors (Artesanias' uncontested claim for approximately $923,000 and LEPCO's uncontested claim for approximately $87,000) [A-503]. The Chapter 7 estate purports to have collected proceeds only from sale of a Pennsylvania house and car, after Jeffery's local Reading counsel had filed for and obtained entry of the

bankruptcy court order for the tenants' turnover of the house and car, and from avoidance actions which the Chapter 7 Trustee settled without trial [A-375 ⁋⁋10-12].

On the one hand, Artesanias filed (and Duane Morris did not object to and so implicitly conceded) documentation confirming that the billing rate of local counsel for the services actually rendered by Duane Morris would have been $250 per hour in 2016 through 2018 (when Duane Morris rendered almost all of its purported services to the Chapter 7 Estate) and that local counsel's billing rate had increased by 2023 to only approximately $300 per hour [A-496-497 ⁋25-26. A-613, 615, 617-625].  See also the recent decision *In re Thomas*, *supra*, 2023 WL 6885827 at *8 & fn. 13 (M.D. Pa. 10/18/2023), holding $295 per hour was an appropriate rate in Pennsylvania for a skilled bankruptcy attorney (who had been practicing for 36 years) in a matter involving debtor's house and four vehicles.

Artesanias' filings also included and reflect (and Duane Morris did not contest) the billing rate of Artesanias counsel (attorney Barry Goldin) who has been practicing law for more than 47 years; was billing during 2016 through 2018 at $250 per hour and thereafter at $300 per hour; and during the past approximately twenty years obtained multiple decisions in complex bankruptcy matters, including (among others) in the Third Circuit the leading decision *In re Wilton Armetale, Inc.,* 968 F.3d 273 (3rd Cir. 2020) and also *In re Jeffery,* 2019 WL 2056688 (Bankr. E.D. Pa. 5/7/2019); in the Fifth Circuit *In re Royal Alice Properties, LLC*, 637 B.R. 465 (Bankr. E.D. La. 2021) and *In re Royal Alice*

*Properties, LLC*, 2023 WL 3687437 (E.D. La. 5/26/2023); and in the Second Circuit *In re Briarpatch Film Corp.*, 281 B.R. 820 (SDNY 2002).[10]  [A-496-497 ¶25-26]

In short, Duane Morris did not contest (and so implicitly conceded) that $250 to $300 per hour billing rate for attorneys in the Reading/Allentown locality -- particularly for sale of a Pennsylvania house and car and pursuit and settlement without trial of avoidance actions in which it purported to have collected for the Chapter 7 Estate a total of only approximately $424,000.

On the other hand, Duane Morris' Fee Application and its Reply filings did not include nor otherwise proffer any admissible evidence that any of its purported services was beyond the competence, or would entitle Duane Morris to more than the $250 to $300 per hour fee, of experienced local counsel in the bankruptcy court's Reading/Allentown locality.   See the case law described above.

In other words, **the court below clearly erroneously ignored as a matter of fact and likewise ignored as a matter of law Duane Morris' failure to sustain its burden of proof that it had rendered any service beyond the competence of, or that would permit it to be paid an hourly rate above the $250 to $300 hourly rate charged by, competent, experienced local counsel in the Reading/Allentown locality in which the Chapter 7 bankruptcy case was filed, the Chapter 7 Trustee maintains her offices, and the Chapter 7 bankruptcy case  was heard.**

---

[10] A few of the many non-bankruptcy decisions obtained by attorney Goldin for his clients in complex litigation include (without limitation) *Arrowhead v. PicturePro LLC*, 2023 WL 109722 (9th Cir. 1/5/2023), *Arrowhead Capital Finance, Ltd. v. Seven Arts Entertainment, Inc.*, 739 Fed. Appx. 701 (2nd Cir. 2018), and cases cited therein such as *Seven Arts Pictures PLC v. Jonesfilm*, 311 Fed Appx. 962 (9th Cir. 2009), *Seven Arts Pictures, Inc. v. Jonesfilm,* 512 Fed. Appx. 419 (5th Cir. 2013), and *Seven Arts Filmed Entertainment Ltd. v. Jonesfilm*, 538 Fed. Appx. 444 (5th Cir. 2013). *See also Night Hawk Limited, v. Briarpatch Limited, L.P.*, 2003 WL 23018833 (S.D. N.Y. 12/23/2003).

4.   Duane Morris Is Not Entitled to Charge an Additional Fee Rate for a "Skill Certification" as to Matters Which Could Be Competently Dealt with by a Non-Certified Experienced Attorney in the Bankruptcy Court's Locality.

A "Master of Fine Arts" ("MFA") degree is not "necessary" to paint a barn -- nor likely to earn the MFA graduate a higher painting fee than an experienced (but non-MFA) barn painter.  Nor should any "skill certification" entitle an attorney to a higher fee rate where no such special "skill" is required – particularly in a Chapter 7 proceeding whose purpose is to economically liquidate debtor's estate so that the proceeds may be properly disbursed to pay debtor's creditors.

Duane Morris did not proffer any purported "skill certification" to justify billing rates of five of the six attorneys billed in its fee request – no purported "skill certification" to justify the (i) $770 per hour billing of Kelly D. Eckel, (ii) $525 increasing to $630 per hour billing for Catherine B. Heitzenrater, (iii) $475 increasing to $520 per hour billing for Morgan L. Swing (a Florida attorney for whom Duane Morris provided no comparable billing rate in her locality), (iv) $305 increasing to $365 per hour billing for then first year associate Drew S. McGehrin, or (v) $465 per hour billing for first year associate Roxanne Indelicato (not even admitted to practice law until 2022) [A-378].

Duane Morris argued and the court below erroneously found that the sixth Duane Morris attorney (Larry Kotler) was entitled to his billing rate, which increased from $715 (in 2016) to $1,045 per hour (by 2023), on grounds he was "bankruptcy-skill certified" [A-15, 378].  But 11 U.S.C §330 and governing case law instead confirm that an enhanced billing rate for "skill certification" applies only where the "certified skill" is "reasonable and necessary" in resolution of the bankruptcy estate.

In the case at hand, the Trustee's motion to employ Duane Morris sought to justify employing Duane Morris on grounds that Duane Morris has "one of the largest restructuring groups in the country" and that "Duane Morris attorneys have played significant roles representing various constituencies in many large and complex cases through the United States" [A-54 ¶8]

Instead, the case at hand was not a complex business reorganization, but rather a personal Chapter 7 case involving sale of the Pennsylvania house and car and an avoidance action against debtor Jeffery (who had filed his Chapter 7 petition in Reading, Pennsylvania) and certain entities to which Jeffery had diverted funds; no business or finance restructuring was contemplated or had; and the Chapter 7 estate has only two creditors  (Artesanias and LEPCO) for whom Duane Morris' recoveries will pay only a small percentage of their remaining claims.

Duane Morris' fee application did not purport to show, and Duane Morris never proffered, any admissible evidence that services (if any) rendered by Duane Morris were beyond the competence of experienced local counsel, were rendered faster than would have been rendered by experienced local counsel, or required any special "skill certification" that justify Duane Morris charging the estate triple the hourly rate of experienced local counsel.

5. Duane Morris' Fee Rate to the Chapter 7 Estate Should Be Reduced to the Hourly Rate Then Prevailing for Competent, Experienced Counsel in the Bankruptcy Court Locality Who Could Render the Services at Issue (Sale of a Pennsylvania House and Car and Filing and Pursuit of Certain Avoidance Actions against Debtor Jeffery and Others).

As described above, Artesanias has provided admissible evidence (and Duane Morris has not contested and so implicitly conceded) that the billing rate for experienced counsel in the Reading/Allentown locality was not more than $250 for 2016 through 2018 and not

more than $300 per hour thereafter and for paralegals in the Reading/Allentown locality was not more than $100 per hour [A-496-497 (¶¶25-26) A-613, 615, 617-625].

As Duane Morris did not proffer or prove that it rendered any services beyond the competence of experienced local counsel, the billing rate in its fee application should be reduced to the billing rate of experienced counsel in the Reading/Allentown locality, and thus reduced for Duane Morris attorneys to not more than $250 for 2016 through 2018 and not more than $300 per hour thereafter and likewise reduced for Duane Morris paralegals to not more than $100 per hour.

C.   Duane Morris Should Not Be Awarded Compensation for Services Required to Be Rendered by and for Which a Statutory Commission Is Payable to the Chapter 7 Trustee, as Payment to Duane Morris Would Double-Dip the Costs to and Thus Deplete Funds of the Estate Otherwise Available for Distribution to Creditors.

1. A Chapter 7 Trustee's Counsel Is Not Entitled to Compensation for Services Required to Be Rendered by and for Which a Statutory Fee Is Instead Paid to the Trustee.

As set forth in 2A Bankr. Service L. Ed. §16B:291:

> "The attorney for the trustee is not to be compensated for tasks which are properly the statutory responsibility of the trustee."

Pursuant to Bankruptcy Code §704, those statutory responsibilities and duties of a Chapter 7 Trustee include (among other things):

> "1. Collecting and reducing to money the property of the estate,
>
> 4. Investigating the financial affairs of the debtor,
>
> 7. Furnishing information concerning the estate and its administration as requested by any party in interest."

The court In re Peterson, 566 B.R. 179, 189-190 (Bankr. M.D. Tenn. 2017) so denied attorney fee charges for time spent performing trustee tasks, as it observed:

"Associative duties spring from these statutory duties none of which may be entrusted to other estate professionals. These additional duties include the following:
-Services relating to the sale of the debtor's assets" …

*Peterson* further observed (*Id.* at 190):

"It has long been a widespread principle that a Trustee may not relinquish their fiduciary and representative duties by delegating their responsibilities to professionals. Trustee duties are just that, the duties entrusted only to the Trustee. They are not to be ignored, nor are they to be delegated, absent well established special circumstances. Therefore, those duties charged to the Trustee cannot be compensable to anyone else, even properly employed professionals of the estate. … [lengthy citations including *In re Meade Land & Dev. Co., Inc.*, 527 F.2d 280, 285 (3rd Cir. 1975) …. *In re Taylor*, 66 B.R. 390, 392 (Bankr. W.D. Pa. 1986)] "

Accordingly, *Peterson* reiterated (*Id*. at 190):

"Services that fall under the categories set forth in §704 are deemed to be compensable under §326 as Trustee compensation and are not compensable under §330 as professional services."

Following *Peterson,* the Bankruptcy Court for the Eastern District of Pennsylvania (Honorable Judge Ashley Chan) entered the decision, *In re Yovtcheva*, 590 B.R. 307 (Bankr. E.D. Pa. 2018), reducing by approximately 60% (from $18,639.02 to $7,040.02) the fees and expenses of counsel for a Chapter 7 Trustee. The Bankruptcy Court reduced those fees as the services were required by the Bankruptcy Code (11 U.S.C. §704) to instead be rendered by the Trustee, who would be paid a statutory fee for those services; as a matter of law, the Trustee could not foist those services onto her counsel; and thus payment to that counsel for those services (which the Trustee was required to render and for which the Trustee would be paid) would constitute improper double-dipping against the estate and would unreasonably and unnecessarily reduce the estate's proceeds available for creditors. Judge Chan so ruled (*Id.* at 316-317):

> "this Court expects that no Chapter 7 trustee will ask its counsel to perform, or seek reimbursement for, services which are statutorily required to be performed by the Chapter 7 trustee under §704(a)."

Even more recently, *In re Gage*, 2022 WL 1487064 (Bankr. D.C. 5/9/2022), reduced the fee application of Chapter 7 Trustee's counsel (the Chapter 7 Trustee's own law firm), as the court ruled (at *8):

> "While the Bankruptcy Code does not explicitly define what constitutes a "necessary service" under §330 for trustee professionals, courts have clarified that the phrase should be narrowly defined as 'services that are necessary because a trustee could not perform them without the professional's specific expertise [citations omitted]

The court then ruled (at *11):

> "If an attorney maintains that he should be compensated for a particular service, then the attorney must describe the service and the complexity of the matter in sufficient detail so that the court can determine on the face of the fee application that the task required the use of a professional".

In other words, the burden is on the attorney to establish that the services for which the attorney seeks compensation are "services outside the scope of the trustee's ordinary duties". *See In re Lexington Heath Lamp and Leisure, LLC,* 402 B.R. 135 (Bankr. M.D.N.C. 2009) which so denied compensation for services of the Chapter 7 trustee's attorneys in reviewing debtor's books and records, investigating estate property, communicating with other parties, and selling or disposing of estate assets (lengthy citations omitted) [*Id*. at 144-145 and fn. 18 (citations omitted)].

2. <u>Duane Morris Should Not Have Been Awarded Compensation for the Sale of the Pennsylvania House and Car Which Instead Were Required by Statute to be Dealt with by, and for Which a Statutory Fee Would Instead Be Paid to, the Chapter 7 Trustee.</u>

In the case at hand, the chapter 7 trustee is provided a statutory commission under 11 USC §704 for sale of the debtor's Pennsylvania house and car [see fn. 3 above].

31

Moreover debtor Jeffery's personal counsel (the local Leisawitz Heller law firm) had filed in October 2016 for and obtained the November 3, 2016 bankruptcy court (Judge Fehling) Order requiring Jeffery's tenants (Balthaser and Castor) to vacate and turn-over debtor's Pennsylvania house and car [A-67-95]. Thus, services then rendered by Duane Morris with respect to turnover of the house and car were duplicative of services rendered by debtor's own counsel.

Upon the Chapter 7 Trustee (herself an experienced bankruptcy trustee) so receiving turnover of debtor's Pennsylvania house and car, any further services of Duane Morris relating to sale of the house and car were further duplicative of services required to be performed by and for which statutory fees would be paid under 11 U.S.C. §704 to the Chapter Trustee.[11]   *See for instance, In re Garcia*, 335 B.R. 717. 726-727 (9th Cir. BAP 2005), because sale of debtor's property is statutory duty of the Chapter 7 Trustee, bankruptcy court properly refused to compensate chapter 7 trustee's counsel for work done in connection with sale of debtor's property (including reviewing listing agreement, communicating with broker, negotiating with debtor's attorney, reviewing title report, and negotiations for sale of property); I*n re Craig,* 651 B.R. 612, 619-620 (Bankr. S.D. Alabama 2023), bankruptcy trustee was required to sell vehicle and so time related to

---

[11] At the bankruptcy court hearing on the fee application, Duane Morris falsely asserted that its services were somehow necessary to persuade debtor Jeffery and his wife to vacate the Pennsylvania house [A-749:19-750:2]. But debtor Jeffery and his wife had earlier relocated to a home in Paisley Florida; they no longer occupied the house (which instead had been rented to tenants Balthaser and Castor [A-67-99]); and thus it was not necessary to persuade Jeffery and his wife to vacate that already vacated house. In any event, any persuasion of Jeffery (to vacate his already-vacated house) could instead have been accomplished by the Chapter 7 Trustee (herself an attorney located in Allentown Pennsylvania specializing in bankruptcy law) or by Jeffery's own counsel (the Leisawitz Heller law firm located in Reading Pennsylvania); thus was required to be accomplished without any Duane Morris charge to the Chapter 7 estate; and was not a task of unusual legal "complexity" requiring a skill thrice the hourly rate of local counsel.

employing auctioneer and sale of vehicle was not compensable as legal work. *In re Parkins*, 2011 WL 1167295 at *10 (Bankr. E.D. Va. 2011), observing that the Chapter 7 trustee should and does have sufficient competency to evaluate and negotiate real estate and vehicle sale contracts, the court *sua sponte* denied or reduced fee request of Chapter 7 trustee's attorneys with respect thereto; *In re Taylor,* 66 B.R. 390, 394 (Bankr. W.D. Pa. 1986) as sale of debtor's property was duty of bankruptcy trustee, the trustee was required to prepare, and thus trustee attorney would be denied compensation for preparing, notices for sale, advertising sale, and other necessary sale documents.

   In short, Duane Morris' services were duplicative of the services statutorily required to be rendered and for which statutory payment would be made to the Chapter 7 Trustee; Duane Morris thus should not have rendered such duplicative services as such services were not "reasonable" or "necessary"; and so Duane Morris should not be paid a fee for such duplicative, unreasonable, and unnecessary services, particularly as payment to both the Trustee and Duane Morris for such services would constitute double-dipping against and thereby reduce the Chapter 7 estate to be disbursed to the estate's two creditors (Artesasnias and LEPCO).

D. The Court Below Erroneously Failed to Deny Duane Morris' Claim for $29,000 of Fees Charged to Pursue Claims against the Wilton Estate, as It Was Evident from the Outset That, in Light of the Small Pot of Funds Available to be Recovered, the Expense of Pursuing Those Claims Would Result in a Loss to, and Thus Was Not "Reasonable" or "Necessary" for, the Jeffery Chapter 7 Estate and Its Creditors.

   Simply because a law firm spent time, does not mean that time charge is compensable or that the law firm used the most economical means of rendering the services.  *See In re Thomas*, supra, 2023 WL 6885827 at *6, citing *In re Szymczak*, 246 B.R. 774, 782 (Bankr. N.D. NJ 2000).   Case law under §330 has repeatedly denied fee requests insofar

as they sought attorney fees for services that had no apparent value to, were not reasonably likely to benefit, and so were not necessary for, the bankruptcy estate.

For instance, the court *In re Kern*, 2021 WL 3518806 (Bankr. D. NJ 8/10/2021). highlighted (at *2) that it "must conduct an objective inquiry based upon what services a reasonable lawyer or law firm would have performed in the same circumstances"; then concluded at (*4) the attorney's services were not reasonably likely to and did not benefit the Chapter 7 estate; and so reduced the attorney fee request.

Likewise, the court *In re Mushroom Transp. Co., Inc*., 486 B.R. 148 (Bankr. E.D. Pa. 2013), reduced by more than half (from $800,000 to no more than $367,000) the fees of Chapter 7 Trustee's special counsel (the Jenning law firm), which represented the trustee in adversary proceedings against defendants.   The court ruled (at 165):

> "At some point during the litigation, counsel objectively should have realized that the trustee's chances for obtaining and/or recovering on those judgments were highly unlikely, and thus it was not appropriate to incur further expenses chargeable to the estate.  That fact, as well as the very modest results ultimately obtained warrant a substantial reduction in the allowance for legal services rendered under §330(a).  …"

The court further concluded (at 166):

> "after review of Jenning's lodestar submissions, only $175,000 (of more than $568,000 in its lodestar request) would be allowable as reasonable and necessary at the time the services were rendered [citations omitted].  *See also In re Eckert*, 414 B.R. 404 (Bankr. N.D. Ill. 2009) (special counsel awarded approximately 38% of requested fees in light of limited recovery and failure to exercise billing judgment in prosecuting litigation on behalf of the trustee)."

Also on point is *In re Reynolds*, 835 Fed. Appx. 395, 397 (10th Cir. 2021) which held that the chapter 7 trustee's power to sell estate property stemmed from the trustee's fiduciary duty to, and so affirmed denial of fees to the chapter 7 trustee's counsel for services which did not benefit, the unsecured creditors.   Similarly applying §330, *In re*

34

*All Island Truck Leasing Corp.*, 546 B.R. 522, 537-538 (Bankr. E.D. NY 2016), ruled that a law firm would only be entitled to compensation if its services provided a benefit to unsecured creditors, and so denied the fee application of a seasoned (K & K) law firm which had reason to know its fees to pursue claims would exceed any net benefits to the chapter 7 estate and its unsecured creditors.[12]

Turning to the case at hand, Artesanias objected to Duane Morris' fee request of $28,913.50 for excessive, unreasonable, and unnecessary services in pursuing an unsecured claim against Jeffery's former and already bankrupt company Wilton [A-479-488].   In light of the small pot of only $30,000 of funds available [A-544 ¶3(c)] to pay nearly a million dollars of already-filed claims of Wilton's unsecured creditors (including Artesanias' claim for its unsatisfied, more than $920,000 judgment against Wilton) [A-540, 549], Duane Morris' filing and pursuit of an unsecured claim against Wilton was destined from the outset to not yield, and ultimately did not yield, a net benefit to the Jeffery Chapter 7 estate and its creditors.

1. Duane Morris' Collection Efforts against the Wilton Estate Were Destined to Be, and In Fact Were, of *No* Benefit to the Jeffery Chapter 7 Estate and Its Creditors.

During September 2016, Wilton filed a voluntary petition under Chapter 7 in the Reading Bankruptcy Court, whereupon experienced Chapter 7 Trustee (David Eisenberg) was appointed to oversee liquidation of Wilton's remaining estate [540 ¶¶1-2].

---

[12] *See also In re Kusler*, 224 B.R. 180, 191-192 (N.D. Okla. 1998) denying fees of Chapter 7 trustee's law firm relating to sale of property (a vehicle) which yielded nothing to the estate creditors, having previously observed (at 184-185) that:

"in Chapter 7 cases, the strongest indicator of 'benefit' is a distribution to creditors. When the liquidation of assets results in payment only of professionals responsible for the liquidation, courts are required to review the matter with great scrutiny.  This Court agrees with those courts which have said that 'absent extraordinary circumstances, bankruptcy estates should not be consumed by the fees and expenses of court-appointed professionals.' [citations omitted]".

The sole remaining tangible asset of Wilton's Chapter 7 Estate was real estate located in Mt. Joy, Lancaster County, Pennsylvania having an appraised $895,000 "as is" fair market value [A-541 ▯▯9-10], against which both Artesanias and North Mill (Wilton's lender) had obtained judgments and asserted liens (each exceeding $920,000) [A-540 ▯4]. Meanwhile, Artesanias had brought and was pursuing a lawsuit against North Mill in federal district court in Easton, Pennsylvania in which Artesanias was (among other things) contesting validity, priority and amount of North Mill's lien on that real estate [A-542 ▯▯13-14, A-543 ▯4]. *See In re Wilton Armetale, Inc., supra,* 968 F.3d at 278-279.

The Wilton Trustee (David Eisenberg) reported that a bidder had emerged to purchase Wilton's real estate for $800,000, but as a prerequisite to sale, the Wilton Trustee had to negotiate and obtain release the competing liens of Artesanias and North Mill against that real estate. However, the settlement which the Wilton Trustee and his counsel negotiated with Artesanias and the separate settlement which the Wilton Trustee and his counsel negotiated with North Mill contained conflicting provisions. Those conflicting provisions were addressed and resolved at January 6, 2017 proceedings in the Wilton bankruptcy court [A-657 *et seq.*].

As so finally negotiated and resolved among Artesanias, North Mill and the Wilton Chapter 7 Trustee, the sum of $520,000 of the $800,000 proceeds of sale was allocated to North Mill, which would release all its claims against the Wilton estate [A-531-538]. In turn, Artesanias would receive the balance of the sale proceeds after payment of expenses of sale and $30,000 expressly reserved for distribution to unsecured creditors; Artesanias would retain the balance of its more than $920,000 proof of claim against Wilton and the Wilton Chapter 7 Estate; and Artesanias would be permitted to continue

36

its separate litigations against North Mill, Jeffery and others with respect to their misconduct [A-540-548].  *See In re Wilton Armetale, Inc., supra,* 968 F.3d at 278-279.

In other words, Artesanias remained principal creditor of both the Wilton and the Jeffery Chapter 7 estates; but the only remaining funds in the Wilton estate were the $30,000 pot set aside for unsecured creditors [A-544 ¶3(c))] of which the lion's share of those funds would be payable to Artesanias on its remaining claims as principal creditor of the Wilton estate [A-557-558].

Meanwhile, Duane Morris (which had attended part of the Wilton bankruptcy court's January 6, 2007 hearing) knew that only that $30,000 pot was available for distribution to creditors; that Artesanias was retaining its claim as Wilton's principal creditor on the balance of its more than $920,000 judgment against and constituting the principal claim against Wilton; and that Artesanias would continue to be entitled to its ratable distributable share ("*pari passu*") in, and so entitled to distribution of nearly all of, that $30,000 pot [A-721:21-722:8].

Nonetheless, to obtain a share of that small $30,000 pot set aside for payment of Wilton's unsecured creditors, Duane Morris elected to file and pursue a claim in the name of the Jeffery estate.  Duane Morris pursued that claim against the Wilton estate, although (in light of hat relatively small amount available for distribution among the unsecured creditors of Wilton's estate), it was mathematically almost impossible for Duane Morris to obtain a sufficient recovery from the Wilton estate to recover Duane Morris' legal fees (approximately $29,000) and related charges of the Jeffery estate's accountant.  [A-479-487]

Moreover, because Artesanias was principal creditor of both the Jeffery estate and the Wilton estate, any recovery would merely take a sum from the Wilton pot available for distribution to Artesanias to put that sum in the Jeffery pot for distribution to Artesanias.

Accordingly, Artesanias delivered an October 17, 2017 letter to the bankruptcy court (then Chief Bankruptcy Judge Fehling presiding over both the Jeffery and Wilton bankruptcy estates) in which Artesanias highlighted Duane Morris's waste in pursuing claims against the Wilton bankruptcy estate [A-557-559].  Thereupon, Duane Morris (on behalf of the Jeffery trustee) resolved the matter by agreeing that 75% of collections by the Jeffery Estate from the Wilton Estate would be paid directly to Artesanias (which would have been entitled to those proceeds anyway but for Duane Morris' wasteful claims against the Wilton estate) [A-571 (¶1), 574-575].

In summary, Duane Morris charged legal fees of $29,000 to pursue Jeffery Estate Claims against the Wilton estate, although from Duane Morris' pursuit of those claims could not and did not result in a recovery large enough to benefit the Jeffery estate, but rather would and did result in a net loss to the Jeffery estate of approximately $25,000 (the amount by which Duane Morris fees of $29,000 and related accounting fees to the Jeffery estate exceed the approximately $5,000 recovered for the Jeffery estate after the 75% distribution directly to Artesanias).

Unfortunately, the court below erroneously ignored those settlement agreements, orders, and other documents in the record, but instead included those $29,000 of Duane Morris fees in its fee award to Duane Morris on grounds that the Wilton estate had presented an extra layer of complexity not normally present in a Chapter 7 case [A-12]. But any such "complexity" of the Wilton docket was and is simply irrelevant in light of

filed documents confirming the small pot of only $30,000 set aside for distribution among claims of Wilton's unsecured creditors; that from the outset, Duane Morris' fees and related accounting fees charged to the Jeffery estate to achieve a recovery from that small $30,000 pot would exceed the amount of any such recovery for the Jeffery estate; and thus that Duane Morris' filing and pursuit of the claims against the Wilton estate would and did not result in a net benefit (but rather would and did result in a net loss) to the Jeffery estate and creditors.

Accordingly, Duane Morris' pursuit of those claims for the Jeffery estate against the Wilton estate and its resulting request of $29,000 of fees from the Jeffery estate in connection therewith, were not "reasonable" or "necessary" and did not represent good "billing judgment", as it was inevitable those services and those fees would not and did not benefit the Jeffery estate and its creditors; and thus the award of those fees was further in violation of, and an abuse of discretion under, §330(a) through (d).

2. The Erroneous Decision of the Court Below Highlights the Disparity between, on the One Hand, the Award of Only Approximately $29,340 of Fees to the Wilton Trustee's Philadelphia Counsel for Services in Resolving the "Complex" Wilton Chapter 7 Estate and, on the Other Hand, the Nearly Eight-Times-Larger $228,000 Fee Award to Duane Morris with respect to the Much Smaller and Less Complex Jeffery Estate.

As described above, that fee award to Duane Morris includes $28,913.50 for filing and pursuit of claims against the Wilton Chapter 7 estate on grounds that the Wilton bankruptcy "presented an extra layer of complexity not normally present in a Chapter 7 case" [A-12].    However, those grounds instead highlight the disparity between the relatively efficient and economical fees charged by counsel for the Wilton Chapter 7 Estate with the inflated fees charged by Duane Morris to the Jeffery Chapter 7 Estate.

On the one hand, the Wilton Chapter Trustee and his counsel (the Philadelphia law firm of Gellert Scali Bushenkell & Brown) succeeded in collecting proceeds of approximately $813,000, of which approximately $664,000 (not including monies paid for tax liens and utility expenses) was disbursed for secured creditors, approximately $77,000 was disbursed to pay administrative fees (including the statutory fee to the Wilton trustee ($44,000) and $30,000 to pay the Wilton trustee's counsel), and approximately $30,000 was disbursed to unsecured creditors [A-369-371].

On the other hand, the Jeffery Chapter 7 Trustee and her counsel Duane Morris succeeded in collecting only $464,493.59; made no disbursement to any secured creditors; and instead seek awards of approximately $320,000 for themselves (including more than $228,000 for Duane Morris).

In other words, Duane Morris as counsel for the Jeffery Chapter 7 Trustee succeeded in collecting only $464,493.59 (only half the amount collected by Wilton's Chapter 7 Trustee and counsel) but charged nearly eight times the fees awarded to the Wilton Trustee's counsel (who dealt with and concluded the "complex" Wilton proceedings).

## IX. <u>CONCLUSION</u>.

The November 2, 2023 decision and order of the Bankruptcy Court as to the fee award to Duane Morris should be reversed, and the matter remanded to the Bankruptcy Court to reduce the Duane Morris fee award as herein described.

As Duane Morris did not sustain its burden of proving that it rendered any services beyond the competence, not contest the billing rate, of experienced local counsel in the Reading/Allentown locality of the bankruptcy court (in which Jeffery's petition was filed, his house and car were located, the Chapter 7 Trustee's offices were also located, and the

bankruptcy case heard), the billing rate in its fee application should have been and should be reduced to the billing rate of experienced counsel in the Reading/Allentown locality. Thus, the billing rate of Duane Morris attorneys should be reduced to the local billing rate of no more than $250 for 2016 through 2018 and no more than $300 per hour thereafter, and likewise reduced for paralegals to not more than the local $100 per hour billing rate.

Pursuant to §330, Duane Morris should not have been awarded fees for services duplicative of services the Chapter 7 Trustee (an experienced bankruptcy attorney) was required to render and for which the Trustee would receive a statutory fee (such as sale of the Pennsylvania house and car for which Duane Morris billed $11,522 [A-475-479]), as Duane Morris' duplicative services were not "reasonable" nor "necessary".

Likewise, Duane Morris should not have been awarded $28,913.50 of fees for pursuing and settling a claim against the Wilton Chapter 7 estate as those services were destined to not benefit, but instead resulted in an approximately $25,000 net loss (after deducting the $28,913.50 fees charged by Duane Morris and related fees of the estate's accountant) to the Jeffery estate and the Jeffery estate's two creditors (Artesanias and LEPCO).

Respectfully Submitted,
Dated: January 19, 2024                 /s/Barry L. Goldin_____
                                         BARRY L. GOLDIN, ESQ.
                                         3744 Barrington Drive
                                         Allentown, PA  18104-1759
                                         Tel: 610-336-6680   Fax: 610-336-6678
                                         Email: barrygoldin@earthlink.net
                                         *Attorney for Appellant/Party in Interest/Judgment*
                                         *Creditor Artesanias Hacienda Real S.A. de C.V.*

## <u>CERTIFICATE OF COMPLIANCE</u>

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements and Type-Size Requirements

   1. This brief complied with the type-volume limitation of Rule 8015(a)(7) of the Federal Rules of bankruptcy Procedure [and corresponding Rule 32(a)(7) of the Federal Rules of Appellate Procedure] because:

      [x] this brief contains 12,684 words, excluding the parts of the brief exempted by Rule 8015(g).

      [] this brief uses a monospaced type and contains [state the number of] lines of text, excluding the parts of the brief exempted by Rule 8015.

   2.  In accordance with the rules of practice of this District Court (Honorable Mia R. Perez), this brief has been prepared in 12-point Times New Roman font [rather than 14-point font otherwise required by Federal Rule of Bankruptcy Procedure 8015(a)(5) and Federal Rule of Appellate Procedure 32(a)(5)].

Dated: January 19, 2024

              /s/Barry L. Goldin
              Barry L. Goldin
              *Attorney for Judgment Creditor/Party-in-Interest/Appellant*
              *Artesanias Hacienda Real S.A. de C.V.*

HAC031221.1APPDMOPENINGPBRIEF

<u>CERTIFICATE OF SERVICE</u>

I certify that on this 19th day of January 2024, the foregoing Brief and Appendix (Volume 1 of 3) were served through the Court's electronic filing system to all persons who have consented to electronic service of the documents in this matter and also electronically served separately by email on:

- Larry J. Kotler, Esq. of the Duane Morris law firm (counsel for Lynn E. Feldman, Chapter 7 Trustee of the bankruptcy estate of debtor Ivan Jeffery) at ljkotler@duanemorris.com

and

- the United States Trustee at USTPRegion03.PH.ECF@usdoj.gov.

Dated: January 19, 2024

By: <u>/s/ Barry L. Goldin</u>
Barry L. Goldin

**APPENDIX**

i

# TABLE OF CONTENTS

**Page**

**Volume 1**

Opinion of the Honorable Patricia M. Mayer, dated
November 2, 2023 ................................................... A-1

Order of the Honorable Patricia M. Mayer, dated
November 2, 2023 ................................................... A-18

Notice of Appeal, dated November 9, 2023............... A-19

**Volume 2**

Docket Sheet in Bankruptcy Case No. 16-15037-
pmm ...................................................................... A-23

Application for an Order Authorizing the
Employment and Retention of Duane Morris LLP
as Counsel to the Chapter 7 Trustee Pursuant to
11 U.S.C. 327 (a) Nunc Pro Tunc to August 15,
2016, dated August 26, 2016 ................................. A-52

Exhibit A to Application –
Proposed Order ..................................................... A-59

Exhibit B to Application –
Declaration of Lawrence J. Kotler, dated
August 26, 2016..................................................... A-62

Exhibit C to Application –
Duane Morris LLP 2016 Billing Rates .................. A-66

Motion of Ivan L. Jeffery and Wilhelmina Jeffery to
Hold Christopher Balthaser and Wendy Castor in
Civil Contempt and Liable for Damages for
Violation of the Automatic Stay Pursuant to 11
U.S.C. 362(a)(3), dated October 12, 2016............. A-67

ii

**Page**

Exhibit A to Motion –
Lease, dated April 23, 2016 ................................... A-72

Exhibit B to Motion –
Agreement of Sale, dated April 23, 2016 .............. A-82

Attachment to Motion –
Proposed Order ....................................................... A-96

Certification of No Response, dated
November 1, 2016 ................................................. A-98

Order of the Honorable Richard E. Fehling, dated
November 3, 2016 ................................................. A-99

Objections and Responses of Judgment Creditor
Artesanias Hacienda Real S.A. de C.V. to Motion
of Chapter 7 Trustee Lynn E. Feldman for Entry
of an Order Pursuant to 11 U.S.C. 105(a) and
Rule 9019(b) of the Federal Rules of Bankruptcy
Procedure Establishing Procedures for Settling
Claims, dated October 9, 2017 ............................. A-102

Exhibit A to Objections –
Letter and E-mail, dated July 20, 2017 (including
Artesanias requests for documents and
accounting/reports) ................................................ A-114

Exhibit B to Objections –
Motion of Motion of Plaintiff/Judgment Creditor
Artesanias for Summary Judgment on Count 4 of
Its Complaint pursuant to 11 U.S.C. 521(e)(2)(C)
and 704 of the Bankruptcy Code and Rule 7056
of the Federal Rules of Bankruptcy Procedure for
Dismissal "With Prejudice" of Debtor Ivan
Jeffery's Bankruptcy Case, dated
September 28, 2017 ............................................... A-118

iii

                                                                      **Page**

Attachment to Objections –
    Proposed Order ....................................................... A-132

Letter from Barry L. Goldin to the Honorable
    Richard E. Fehling, dated October 17, 2017, with
    Exhibit.................................................................... A-137

Order of the Honorable Richard E. Fehling, dated
    November 1, 2017 ............................................... A-141

Transcript of November 1, 2017 Hearing .................. A-144

Motion for Order Authorizing an Interim
    Distribution to Judgment Creditor Artesanias
    Hacienda Real S.A. de C.V. and Further
    Authorizing Additional Distributions as Required
    by the Trustee's Court-Approved December 12,
    2017 Settlement Agreement, dated
    August 16, 2018..................................................... A-207

        Attachment to Motion –
        Proposed Order ....................................................... A-213

Order of the Honorable Richard E. Fehling, dated
    August 20, 2018..................................................... A-216

Opposition of Patries in Interest Artesanias
    Hacienda Real S.A. de C.V. and Wilton Armetale,
    Inc. a/k/a Wapita, Inc. to Motion of the Chapter 7
    Trustee (Lynn E. Feldman) for an Order
    Authorizing and Approving Settlement
    Agreement with Debtor Ivan L. Jeffery and His
    Wife Wilhemina Jeffery, dated
    November 13, 2018 ............................................... A-218

iv

                                                                    **Page**

Request of Patries in Interest Artesanias Hacienda
    Real S.A. de C.V. and Wilton Armetale, Inc. a/k/a
    Wapita, Inc. for Judicial Notice of Orders and
    Other Related Documents Relevant to their
    Opposition to Motion of the Chapter 7 Trustee
    (Lynn E. Feldman) for an Order Authorizing and
    Approving Settlement Agreement with Debtor
    Ivan L. Jeffery and His Wife Wilhemina Jeffery,
    dated November 13, 2018 ...................................... A-236

Exhibit 1 to Opposition –
    Proof of Claim ........................................................ A-240

Exhibit 2 to Opposition –
    Complaint to Deny Debtor Discharge and to
    Dismiss Bankruptcy Case, dated
    January 19, 2017 ..................................................... A-254

Exhibit 3A to Opposition –
    Chapter 7 Trustee David A. Eisenberg's Motion
    to Abandon Property of the Estate Pursuant to
    Section 554(b), dated March 20, 2018 .................. A-303

Exhibit 3B to Opposition –
    Stipulation and Consent Order Resolving
    Response to Proposed Abandonment Order, dated
    June 6, 2018 ............................................................ A-306

Exhibit 4 to Opposition –
    Orders of the Honorable Marilyn Heffley, dated
    April 17, 2017 and May 1, 2017 ........................... A-314

Exhibit 5 to Opposition –
    Memorandum Opinion of the Honorable Marilyn
    Heffley, dated June 2, 2017 ................................... A-319

v

|  | **Page** |
|---|---|

Exhibit 6 to Opposition –
Order of the Honorable Andre Birotte Jr., dated
September 8, 2017 ................................................ A-326

Exhibit 7 to Opposition –
Excerpts from the Transcript of August 15, 2018
Proceedings........................................................... A-330

Exhibit 8A to Opposition –
Notice of Deposition, dated November 2, 2018 .... A-340

Exhibit 8B to Opposition –
Subpoena, dated November 2, 2018 ...................... A-342

Exhibit 9 to Opposition –
Recusal Order, dated July 18, 2017 ...................... A-344

Attachment to Opposition –
Proposed Order ...................................................... A-347

Objections of Parties in Interest Artesanias
Hacienda Real S.A. de C.V. and Wilton Armetale,
Inc. a/k/a Wapita, Inc. to Improper Reply of the
Chapter 7 Trustee (Lynn E. Feldman) as to her
Motion for an Order Authorizing and Approving
Settlement Agreement with Debtor Ivan L.
Jeffery and His Wife Wilhemina Jeffery, dated
November 19, 2018 ................................................ A-349

Order of the Honorable Richard E. Fehling
Approving Settlement Agreement by and
between Lynn E. Feldman, Chapter 7 Trustee,
and Ivan L. Jeffery and Wilhelmina Jeffery, dated
November 26, 2018 ................................................ A-352

Trustee's Final Report *In re Wilton Armetale, Inc.*,
dated September 10, 2020...................................... A-354

vi

**Page**

First and Final Fee Application for Compensation
and Reimbursement of Expenses of Duane
Morris LLP, as Counsel for the Chapter 7
Trustee, for the Period from August 15, 2016
through June 30, 2023, dated July 7, 2023 ............ A-373

Exhibit A to Application –
Invoices .................................................................. A-383

Exhibit B to Application –
Proposed Order ..................................................... A-453

Notice of First and Final Fee Application for
Compensation and Reimbursement of Expenses
of Duane Morris LLP, as Counsel for the Chapter
7 Trustee, for the Period from August 15, 2016
through June 30, 2023, dated July 7, 2023 ............ A-456

**Volume 3**

Opposition Memorandum of Law of Judgment
Creditor/Party-In-Interest Artesanias Hacienda
Real S.A. de C.V. to the Inflated and Improper
First and Final Fee Application for Compensation
and Reimbursement of Expenses of Duane
Morris LLP, as Counsel for the Chapter 7
Trustee, for the Period from August 15, 2016
through June 30, 2023, dated July 28, 2023 .......... A-459

Schedule S-1 ......................................................... A-473

Schedule S-2 ......................................................... A-475

Schedule S-3 ......................................................... A-480

Schedule S-4 ......................................................... A-488

Schedule S-5 ......................................................... A-489

vii

**Page**

Affidavit of Barry L. Goldin, for Creditor/Party-In-
Interest Artesanias Hacienda Real S.A. de C.V.,
in Opposition to Fee Application of Duane
Morris Law Firm, sworn to July 28, 2023 ............. A-490

Exhibit 1 to Goldin Affidavit –
September 8, 2016 Order Authorizing
Employment and Retention of Duane Morris as
Counsel to the Chapter 7 Trustee ......................... A-499

Exhibit 2A to Goldin Affidavit –
Claim Register of the Jeffery Chapter 7 Estate...... A-502

Exhibit 2B to Goldin Affidavit –
Artesanias Proof of Claim filed November 16,
2016 in this case..................................................... A-505

Exhibit 3A to Goldin Affidavit –
January 6, 2017 Order approving the Wilton
Trustee's Settlement Agreements with Artesanias
and North Mill and related sale of Wilton
property.................................................................. A-526

Exhibit 3B to Goldin Affidavit –
Settlement Agreement between Wilton Chapter 7
Trustee and North Mill........................................... A-530

Exhibit 3C to Goldin Affidavit –
Amended Settlement Agreement between Wilton
Chapter 7 Trustee and Artesanias ......................... A-539

Exhibit 3D to Goldin Affidavit –
Wilton Trustee's Report of Consummated Sale..... A-549

Exhibit 4 to Goldin Affidavit –
Jeffery Chapter 7 Trustee's April 3, 2017 Report
of Sale and of Pennsylvania House ....................... A-554

**viii**

                                                                    **Page**

Exhibit 5A to Goldin Affidavit –
October 17, 2017 Letter to Judge Fehling
objecting to Jeffery Trustee's wasteful filing of
claims against the Wilton bankruptcy estate.......... A-556

Exhibit 5B to Goldin Affidavit –
January 10, 2018 Order pursuant to Rule 9019
approving the Settlement Agreement between the
Wilton Trustee and the Jeffery Trustee and the
attached Settlement Agreement ............................. A-561

Exhibit 5C to Goldin Affidavit –
August 20, 2018 Order as to distribution of
proceeds between the Wilton Trustee and the
Chapter 7 Trustee to Artesanias ............................ A-573

Exhibit 6A to Goldin Affidavit –
October 23, 2018 Motion of Jeffery Trustee for
approval of Settlement Agreement with Ivan and
Wilhelmina Jeffery................................................ A-576

Exhibit 6B to Goldin Affidavit –
November 26, 2018 Order approving Settlement
Agreement between the Jeffery Chapter 7 Trustee
and Ivan and Wilhelmina Jeffery .......................... A-582

Exhibit 7A to Goldin Affidavit –
Motion filed September 19, 2017 by the Jeffery
Chapter 7 Trustee for order for Procedure for
Settling Certain Claims.......................................... A-585

Exhibit 7B to Goldin Affidavit –
Artesanias Objection to Jeffery Trustee Motion
for Procedure for Settling Certain Claims ............. A-594

ix

**Page**

Exhibit 7C to Goldin Affidavit –
Debtor Jeffery's Objection to Jeffery Trustee
Motion for Procedure for Settling Certain
Claims ................................................................ A-607

Exhibit 8A to Goldin Affidavit –
July 10, 2023 email from bankruptcy attorney
Kevin Kercher (Allentown PA) ............................ A-612

Exhibit 8B to Goldin Affidavit –
July 11, 2023 email from bankruptcy attorney
Bambrick (Reading, PA) ........................................ A-614

Exhibit 8C to Goldin Affidavit –
2022 Legal Trends Report ..................................... A-616

Reply of Duane Morris LLP as Counsel for the
Chapter 7 Trustee to Opposition and
Memorandum of Law of Judgment
Creditor/Party-In-Interest Artesanias Hacienda
Real S.A. de C.V. to Duane Morris' First and
Final Fee Application, dated August 17, 2023 ....... A-627

Exhibit A to Reply –
Excerpts from Transcript of January 6, 2017
Hearing .................................................................. A-643

Exhibit B to Reply –
Time Sheet Excerpts Relative to North Mills
Settlement ............................................................. A-648

Request of Party-In-Interest Artesanias Hacienda
Real S.A. de C.V. for Judicial Notice in Support
of Its Opposition to the Reply of Duane Morris
with Respect to Duane Morris' First and Final
Fee Application, filed August 18, 2023 ................. A-653

x

**Page**

Exhibit 1 to Request –
Transcript of January 6, 2017 Hearing *In re
Wilton Armetale, Inc.* ............................................ A-656

Objection of Party-In-Interest Artesanias Hacienda
Real S.A. de C.V. to Duane Morris' Unsupported
Reply Memorandum with Respect to Duane
Morris' First and Final Fee Application, filed
August 18, 2023 ....................................................... A-737

Transcript of August 22, 2023 Hearing...................... A-739

Case 2:23-cv-04452-MRP   Document 7   Filed 01/19/24   Page 65 of 86

Case 16-15037-pmm   Doc 250-2   Filed 11/09/23   Entered 11/09/23 14:49:14   Desc
Exhibit #12  Opinion Appealed From Nov 2 2023    Page 2 of 18

Case 16-15037-pmm    Doc 246   Filed 11/02/23   Entered 11/02/23 12:49:31   Desc Main
Document    Page 1 of 17

### UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **In re:** | : | **Chapter 7** |
| | : | |
| **Ivan L. Jeffery,** | : | **Case No.   16-15037 (PMM)** |
| | : | |
| **Debtor.** | : | |

## O P I N I O N

### I. INTRODUCTION

Before this court is the first and final fee application for compensation and reimbursement of expenses of Duane Morris LLP, as counsel for the Chapter 7 trustee, for the period from August 15, 2016 through June 30, 2023 filed on July 7, 2023. Duane Morris's fee application seeks allowance of compensation in the amount of $220,000.00 and reimbursement of expenses of $11,267.36.  Creditor-Artesanias Hacienda Real S.A. de C.V. objects to the fee application.  For the reasons set forth below, after a reduction of compensation in the amount of $3,223.50, the Application will be approved in the amount of $216,776.50 in compensation and $11,267.36 as reimbursement for expenses.

### II. JURISDICTION AND VENUE

Venue in this District and Court is proper pursuant to 28 U.S.C. §§1408 and 1409. Jurisdiction over this matter is proper pursuant to 28 U.S.C. §1334(b).  This is a core proceeding under 28 U.S.C. §157(b)(2)(A).

### III. PROCEDURAL AND FACTUAL BACKGROUND

Debtor Ivan L. Jeffery (the "Debtor") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on July 15, 2016. On July 18, 2016, Lynn E. Feldman was appointed as the Chapter 7 trustee (the "Trustee"). The Trustee later determined that this was an asset case.

Shortly thereafter, the Trustee filed an application to retain the services of Duane Morris LLP ("Duane Morris"), *nunc pro tunc* to August 15, 2016, as counsel to the Trustee. At the time of the Trustee's application, Duane Morris charged $375.00 to $715.00 per hour for its services. No parties filed an objection to the Trustee's retention of Duane Morris as counsel. This Court later approved the Trustee's application, finding that Duane Morris's retention was in the best interest of the estate and its creditors pursuant to 11 U.S.C. §327(a).

The Debtor was formerly the principal of the entity Wilton Armetale, Inc. a/k/a WAPITA, Inc. ("Wilton"), which produced and sold household tableware to large suppliers. On September 9, 2016, Wilton filed a separate voluntary petition for Chapter 7 relief. See Bankr. Case No. 16-16779. Following the Debtor and Wilton's separate filings, two (2) creditors filed proofs of claims against both Debtor and Wilton's Estates: North Mill Capital, LLC ("North Mill") and Artesanias Hacienda Real S.A. de C.V. ("AHR"). The third creditor relevant to this decision, LEPCO, filed a claim only against the Debtor.

For nearly seven (7) years, on behalf of the Trustee, Duane Morris pursued and settled claims against and with parties-at-interest to both Debtor and Wilton's Estates. As a result, Duane Morris maintained overlapping responsibilities between the two (2) cases that are not common to "routine" Chapter 7 filings in this District.[1] On July 7, 2023, the Applicant filed its first and final

---

[1] This Court understands that every case and client will present unique challenges to a Chapter 7 trustee's counsel and hesitates to call any filing "routine." However, based upon this Court's thorough review of the docket and Duane Morris's billing entries, the Debtor's case presented all parties with issues different from most Chapter 7 cases.

A-2

fee application (the "Application"), and now seeks an allowance of compensation in the amount

of $220,000.00 and reimbursement of expenses of $11,267.36. The Application shows that Duane

Morris billed 395.50 hours at rates ranging from $305.00 to $1,045.00 per hour for its services

rendered between August 15, 2016 through June 30, 2023.

On July 28, 2023, AHR filed an objection to the Application (the "Objection") by which

AHR requested the reduction of Duane Morris's fees to one-third of net proceeds recovered for

the Debtor's Estate. Duane Morris timely filed a response on August 17, 2023. An evidentiary

hearing on Duane Morris's Application and AHR's Objection was held on August 22, 2023.

## IV. THE PARTIES' ARGUMENTS

AHR forwards six (6) arguments to support its contention that this Court should disallow

a portion of Duane Morris's professional compensation.

First, AHR asserts that the withdrawal of North Mill's claim against the Debtor's Estate

(the "North Mill Settlement") was the result of negotiations between AHR, the Chapter 7 Trustee

in the Wilton case ("the Wilton Trustee"), and North Mill; August 22, 2023 Hearing Transcript at

19-21 [Doc. # 245] ("Aug. 22 Transcript"). In other words, AHR contends that Duane Morris

served no role in devising the Wilton Settlement; Aug. 22 Transcript at 19-21. Duane Morris

responds that AHR fails to distinguish between North Mill's settlement in the Debtor's case and

North Mill's settlement in the Wilton case. Aug. 22 Transcript at 9. Duane Morris argues that its

services rendered in connection to the North Mill Settlement were a separate, additional concession

that only related to the Debtor's case and a product of Duane Morris's own efforts. Aug. 22

Transcript at 9.

Second, AHR argues that Duane Morris seeks compensation for services that should have

been rendered instead by the Trustee. Aug. 22 Transcript at 21-24. To support this argument,

A-3

AHR submits that Duane Morris's involvement in the sale of Debtor's real property and Mercedes-Benz was an "ordinary service" which the Trustee had a statutory obligation to pursue. Aug. 22 Transcript at 21-24. Yet AHR does not advance what portion—if any—of Duane Morris's professional services were those that were vested to the Trustee under 11 U.S.C. §704. Instead, AHR provides a blanket assertion that services relating to this sale of the Debtor's real property and Mercedes-Benz in this case should have been rendered by the Trustee. Duane Morris responds that the sale of the real property and Mercedes-Benz were not typical sales in a Chapter 7 case. Aug. 22 Transcript at 10-12. Duane Morris contends that prior to the Debtor's filing, the Debtor leased the Debtor's real property and Mercedes-Benz to two third-party lessees (the "Third-Party Lessees"). Aug. 22 Transcript at 10-12. Duane Morris argues after the Debtor's filing, the Third-Party Lessees refused to surrender possession of the Debtor's real property and Mercedes-Benz to the Trustee—thwarting the prospect of its sales. Aug. 22 Transcript at 10-12. As a result, the Third-Party Lessees continuing use of the Debtor's properties required Duane Morris to expend significant time and resources in ensuring the Trustee's collection and disposition of the properties. Aug. 22 Transcript at 10-11.

Third, AHR argues Duane Morris charged fees for "unreasonable and unnecessary services" in its assertion of claims against the Wilton Estate. Aug. 22 Transcript 22-23. AHR argues the Duane Morris billed $29,000.00 for its actions taken against the Wilton Estate and that those actions recovered $5,000.00 for the Estate.[2] Aug. 22 Transcript 22-23. AHR further submits Duane Morris's professional services were unreasonable and unnecessary because the Wilton Estate's only assets were its real property and a potential malpractice claim against Wilton's former

---

[2] As to how much Duane Morris's actions recovered for the estate, AHR's testimony is contradictory: in its Objection, AHR argues Duane Morris's efforts yielded $5,000.00 while at the hearing AHR argues Duane Morris efforts yielded a $23,000.000 recovery. Compare Doc. # 234, with Aug. 22 Transcript at 23.

4

A-4

Case 2:23-cv-04452-MRP   Document 7   Filed 01/19/24   Page 69 of 86

Case 16-15037-pmm   Doc 250-2   Filed 11/09/23   Entered 11/09/23 14:49:14   Desc
Exhibit #12  Opinion Appealed From Nov 2 2023   Page 6 of 18

Case 16-15037-pmm   Doc 246   Filed 11/02/23   Entered 11/02/23 12:49:31   Desc Main
Document   Page 5 of 17

counsel and, as a result, recovery against the Wilton Estate was limited from the outset. Aug. 22 Transcript 22-23. Duane Morris filed two proofs of claim against the Wilton Estate (the "Wilton Claims") and later settled objections the Wilton Claims with the Wilton Trustee (the "Wilton Settlement"). Aug. 22 Transcript at 13; see also Case No. 16-16779, Claim Nos. 10-1, 11-1, Doc. # 113. Duane Morris contends fees incurred in connection with the Wilton Settlement were appropriate and necessary because they led to the eventual and continued disbursement of funds towards both AHR and the Debtor's Estate. Aug. 22 Transcript at 13.

Fourth, AHR argues Duane Morris's services rendered following the closing of the last preference action in 2019 were neither reasonable nor necessary. AHR contends Duane Morris's services rendered between 2019 to 2023 resulted in unreasonable and unnecessary fees for the estate. Doc. # 234. AHR does not state in its Objection *why* those services were unreasonable and unnecessary. Duane Morris argues its preference actions recovered $358,535.22 for the estate and much of which will ultimately be disbursed to AHR. In support of its argument, Duane Morris provided this Court with time sheets reflecting its preparation, negotiations, and settlement of those preference actions. See Doc. # 230, Ex. A. Duane Morris further argues AHR itself increased Duane Morris's fees because AHR opposed numerous matters in the Debtor's case, the adversary proceedings, and in the Wilton Case. Doc. # 240, Ex. C; Aug. 22 Transcript at 17.

Fifth, AHR argues Duane Morris's fees far exceed the prevailing market rate in this District and that Duane Morris charged excessive rates for a "relatively simple" case. Doc. # 234; Aug. 22 Transcript at 24-27. That is, according to the objector, the administration of this case did not require a high degree of experience or skill. Doc. # 234. AHR submits rates of local counsel— none of whom have acted as counsel to a Chapter 7 Trustee in this District. Doc. # 234; Aug. 22 Transcript at 25. AHR further argues this Court limits a Chapter 7 Trustee's attorney's professional

fees to one-third of net recoveries. Aug. 22 Transcript at 27. Duane Morris points out that its junior counsel, with lower rates, rendered services when possible. Aug. 22 Transcript at 17. Duane Morris further submits that the majority of its services were rendered before its hourly rate reached $1,045.00 per hour. Aug. 22 Transcript at 17. Duane Morris also argues a flat fee for counsel's services are in direct contrast to 11 U.S.C. §330(a)(3)(E), which directs the court to look at the skills and experience of the Chapter 7 trustee's professional.

The UST raised two (2) points to AHR's fifth argument: (1) this court has never followed a one-third net recovery rule; and (2) while Duane Morris charges a higher rate than most local attorneys, this District has no local rule capping an attorney's hourly rate. Aug. 22 Transcript at 37-38.

Lastly, AHR asserts that Duane Morris improperly charged $6,447.00 for the preparation of its Application. Duane Morris billed the estate at the rates of $1,045.00 and $465.00 per hour for the preparation of its Application. AHR argues that such fees provide no benefit to the estate and are inflated, particularly given that the nature of this work. Aug. 22 Transcript at 22. Duane Morris counters that professionals are entitled to recover fees for the preparation of their fee applications. Duane Morris further that it billed 4.50 hours, at its lowest possible attorney rate of $325.00 per hour, for the preparation of its Application. Doc. # 240; Aug. 22 Transcript at 15. Duane Morris submits it thereafter billed 3.50 hours, at a rate of $1,095.00 per hour, for the review of its junior counsel's work product and for the subsequent reduction of certain billing entries in its Application.[3] Doc. # 240.

---

[3] Duane Morris submits at the hearing it reduced fees in the amount of $65,237.50 from its review of the Application. Aug. 22 Transcript at 16.

A-6

## V.  RELEVANT BACKGROUND LAW

This Court has and will continue to review *all* fee applications before it—regardless of whether an objection was filed. In re Busy Beaver Bldg. Centers, Inc., 19 F.3d 833, 841 (3d Cir. 1994) ("[T]he bankruptcy court has a *duty* to review fee applications.") (emphasis in original); In re Yovtcheva, 590 B.R. 307, 314 (Bankr. E.D. Pa. 2018).

### A.  11 U.S.C. §327(a)

Under Bankruptcy Code §327(a), "the trustee, with the court's approval, may employ one or more attorneys . . . that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under [the Bankruptcy Code]." 11 U.S.C. §327(a).  The role of this Court is not to "blindly" approve a trustee's request, rather, this Court must first ask whether "the attorney's special professional skills are necessary for the protection and benefit of the estate or for the furtherance of the aims of the case." In re Rheam of Indiana, Inc., 111 B.R. 87, 100 (Bankr. E.D. Pa. 1990), aff'd in part, vacated in part, 133 B.R. 325 (E.D. Pa. 1991).

### B.  11 U.S.C. §330

Under §330 of the Bankruptcy Code, this Court has the power to award a professional person "reasonable compensation for actual, necessary services rendered" and provide "reimbursement for actual, necessary expenses." 11 U.S.C. §330(a)(1).  This Court need not award all the compensation that is requested in a professional's fee application.  11 U.S.C. §330(a)(2). Accordingly, the fee applicant has the burden of proving their services are compensable. Woods v. City Nat. Bank & Trust Co. of Chicago, 312 U.S. 262, 268, 61 S. Ct. 493, 85 L. Ed. 820 (1941) (Decided under Chapter X of the Chandler Act); Zolfo, Cooper & Co. v. Sunbeam-Oster Co., 50

A-7

Case 2:23-cv-04452-MRP   Document 7   Filed 01/19/24   Page 72 of 86

Case 16-15037-pmm   Doc 250-2   Filed 11/09/23   Entered 11/09/23 14:49:14   Desc
Exhibit #12   Opinion Appealed From Nov 2 2023   Page 9 of 18

Case 16-15037-pmm   Doc 246   Filed 11/02/23   Entered 11/02/23 12:49:31   Desc Main
Document   Page 8 of 17

F.3d 253, 261 (3d Cir. 1995) (citing In re Metro Transp. Co., 107 B.R. 50, 53 (E.D. Pa. 1989)); In re Murray, 2007 WL 2317523, at *2 (Bankr. E.D. Pa. Aug. 6, 2007).

In determining an award of "reasonable compensation" this Court must "consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—"

> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial **at the time at which the service was rendered** toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. §330(a)(3)(emphasis added).

The Third Circuit further instructs courts to utilize the "lodestar" method before awarding reasonable fees. Busy Beaver, 19 F.3d at 849, 856. Its application requires courts to multiply a reasonable hourly rate of an attorney's compensable services by the number of hours spent on such services. Id. at 849 n.21; In re Smith, 331 B.R. 622, 628 (Bankr. M.D. Pa. 2005) (citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)). Under the lodestar method, not all services are billable and administrative tasks should be billed at an appropriate rate. Busy Beaver, 19 F.3d at 855; In

Case 2:23-cv-04452-MRP   Document 7   Filed 01/19/24   Page 73 of 86

Case 16-15037-pmm   Doc 250-2   Filed 11/09/23   Entered 11/09/23 14:49:14   Desc
Exhibit #12 Opinion Appealed From Nov 2 2023   Page 10 of 18

Case 16-15037-pmm   Doc 246   Filed 11/02/23   Entered 11/02/23 12:49:31   Desc Main
Document   Page 9 of 17

re Strauss, 2023 Bankr. LEXIS 841, at *14 (Bankr. M.D. Pa. Mar. 31, 2023) (citing In re Szymczak, 246 B.R. 774, 782 (Bankr. D. N.J. 2000)).

Compensation will not be awarded to a trustee's professional where the services were (1) an unnecessary duplication or (2) not "reasonably likely to benefit the debtor's estate or necessary to the administration of the estate." 11 U.S.C. §330(a)(4). Section 330(a)(4)(A) does not require a trustee or their professional show their services provided an actual benefit to the estate. In re Top Grade Sausage, Inc., 227 F.3d 123, 132 (3d Cir. 2000). Instead, they must show their services were "*reasonably likely to benefit the debtor's estate*" at the time they were rendered. Id. (emphasis added); see also In re Hosp. Partners of Am., Inc., 597 B.R. 763, 767 (Bankr. Del. 2019) ("As a practical matter, bankruptcy professionals are not guarantors of the success of a particular theory, proceeding, or strategy."); In re Grasso, 586 B.R. 110, 144 (Bankr. E.D. Pa. 2018) (Section 330(a) "must be applied without the benefit of hindsight.") (citing Top Grade).

In setting this standard, the Third Circuit further instructs Bankruptcy Courts need not "become enmeshed in a meticulous analysis of every detailed facet of the professional representation." Busy Beaver, 19 F.3d at 845 (quoting Lindy Bros. Builders, Inc. v. Am. Radiator & Std. Sanitary Corp., 540 F.2d 102, 116 (3d Cir. 1976)). The role of this Court is not to calculate a professional's compensation to an unblemished exactitude. Rather, this Court's primary responsibility is to review, prevent, and correct "*reasonably discernable* abuses" in a professional's fee application. Id. (emphasis added).

## VI. DISCUSSION

A brief review of the docket and related matters in the Wilton case leads to a simple conclusion: this was not a typical Chapter 7 case in which a few assets were sold and preference actions were administered by the trustee's counsel. Instead, Duane Morris devoted significant

Case 2:23-cv-04452-MRP   Document 7   Filed 01/19/24   Page 74 of 86

Case 16-15037-pmm   Doc 250-2   Filed 11/09/23   Entered 11/09/23 14:49:14   Desc
Exhibit #12  Opinion Appealed From Nov 2 2023   Page 11 of 18

Case 16-15037-pmm   Doc 246   Filed 11/02/23   Entered 11/02/23 12:49:31   Desc Main
Document   Page 10 of 17

time and resources towards competing interests across parallel, but separate, cases. The
complexities of those related issues between obtaining both the North Mill and Wilton Settlements,
the added difficulties selling the Debtor's real property and Mercedes-Benz, and AHR's persistent
objections throughout the life of the Debtor's case required more time and effort on the part of the
Trustee and Duane Morris. Based on the forgoing facts, this Court finds Duane Morris's services
on behalf of the Trustee were reasonable and necessary to the administration of the Debtor's case.
However, as discussed below, billing the Debtor's Estate $1,045.00 per hour in reviewing one's
own fee application is neither reasonable nor necessary as it is administrative—not legal—work.

## A. The North Mill Settlement

Duane Morris and AHR quarrel over the circumstances resulting in the North Mill
Settlement. See Docs. # 230, 234, 240; Aug. 22 Transcript. However, this Court's concern only
lies with the services Duane Morris rendered for the Trustee towards the initial settlement in the
Wilton case and the alternative North Mill Settlement in the Debtor's case. Duane Morris's billed
7.50 hours for its efforts in obtaining the North Mill Settlement. Docs. # 230, Ex. A., 240, Ex. B.

The relevant billing entries state that Duane Morris: (1) reviewed filings and documents
before this Court and the Wilton Court (1.10 hours); (2) communicated with counsel for North
Mill, AHR, the Trustee, and the Wilton Trustee (4.30 hours); and (3) participated at a hearing
before the Wilton court (2.20 hours). See Docs. # 230, Ex. A., 240, Ex. B. Duane Morris conceded
that the withdrawal of North Mill's claim was significant. See Aug. 22 Transcript at 9-11. Duane
Morris's focus remained on its efforts to reach a resolution in the Debtor's estate despite its
additional involvement in the Wilton Case. See Aug. 22 Transcript at 9-11. It is clear that Duane
Morris pursued the North Mill settlement for the benefit of the Debtor's Estate and did so
successfully. But see In re Xebec, 147 B.R. 518 (B.A.P. 9th Cir. 1992) ("the benefit analysis does

A-10

not require that the services rendered by the [trustee]'s attorney be successful in every circumstance.").

This Court maintains broad discretion to "determine the number of hours reasonably expended." Macke Int'l Trade, Inc., 370 B.R. 236, 254 (9th Cir. B.A.P. 2007). Few counsel for a Chapter 7 trustee are thrust into the balancing act that occurred here. Different parties-at-interest to North Mill's claim had competing visions and incentives for the sale proceeds of the Wilton Property. Given the importance of North Mill's claim to a multitude of parties, Duane Morris's services in connection to the North Mill Settlement were essential to the furtherance of both its client's position and the Debtor's case. Expending 7.50 hours in pursuit of those services were reasonable and necessary for the administration of the Debtor's Estate.

**B.  The Sale of the Debtor's Real Property & Mercedes-Benz**

The sale of the Debtor's real property and Mercedes-Benz required skill and expertise beyond that expected of ordinary counsel to the Chapter 7 trustee. In most circumstances, the trustee's counsel need not be involved in duties statutorily delegated to the trustee. One of those duties includes "collect[ing] and reduc[ing] to money the property of the estate." 11 U.S.C. §704(a)(1). However, where unique circumstances exist, and the resolution of those circumstances requires legal expertise, counsel's obligations which overlap with the trustee may be compensable. In re J.W. Knapp Co., 930 F.2d 386, 388 (4th Cir. 1991). The fee applicant will still carry the burden of proving their services are reasonable and necessary. Zolfo, Cooper & Co., 50 F.3d at 261 (citing Metro Transp. Co., 107 B.R. at 53).

This Court finds the Third-Party Lessees' efforts to thwart the Estate's collection and sale of the real property and Mercedes-Benz necessitated Duane Morris's involvement. Duane Morris adequately demonstrated the need for its joinder motion and communications with counsel

A-11

to the Third-Party Lessees,[4] see Doc. # 67, both of which are compensable as reasonable and necessary services under 11 U.S.C. §330(a). The sale of the Debtor's real property and Mercedes-Benz yielded a $105,985.37 recovery for the estate. Doc. # 230.

AHR fails to explain *why* Duane Morris efforts in collecting and disposing of the Debtor's real property and Mercedes-Benz were an "ordinary service" for the Trustee. In its Objection, AHR argues this Court cannot award fees for Duane Morris's services that should have been rendered by the Trustee under 11 U.S.C. §704(a). Doc. # 234. Relying on In re Yovtcheva, AHR attempts to show that courts in this District will not award fees to a trustee's counsel for duplicative services like asset collection. 590 B.R. at 313.

But AHR makes no real attempt to apply Yovtcheva to the facts here. This is not surprising, given that Yovtcheva is a markedly simpler case than the Debtor's. In Yovtcheva, the Debtor maintained a single asset. Id. at 309. The court refused to award fees for counsel's administrative efforts in collecting proceeds to a life insurance policy, finding those tasks should have been rendered by either a paralegal or the trustee. In re Yovtcheva, 590 B.R. 307, 315 (Bankr. E.D. Pa. 2018). Unlike Yovtcheva, Duane Morris's efforts to collect and sell the Debtor's assets required significant resources and legal expertise the ordinary Chapter 7 trustee would not possess.

### C. The Wilton Settlement

Like other issues presented in this Application, the Debtor's pursuit of the Wilton Claims against the Wilton Estate presented an extra-layer of complexity not normally present in a Chapter 7 case. AHR expresses a general dissatisfaction with the pursuit of the Wilton Claims because the

---

[4] The Debtor and his spouse moved to hold the Third-Party Lessees in violation of the automatic stay and sought an order relinquishing the Property to the Estate. Doc. # 60. On October 17, 2016, Duane Morris joined the Debtor's motion and requested damages be awarded to the Estate. Doc. # 67.

A-12

Wilton Estate maintained few assets at the outset and expended significant funds for a limited recovery.

However, the pursuit of Wilton Claims were reasonably likely to benefit the Debtor's Estate and did in fact materially do so. Upon Duane Morris filing the proofs of claims, if allowed, the Debtor's Estate was positioned to become the largest unsecured creditor in the Wilton case. When Duane Morris and the Wilton Trustee ultimately reached a settlement regarding those claims, both the Debtor's Estate and AHR sought to benefit.[5] See Bankr Case No. 16-16779, Doc. # 113.

From the time the Wilton Claims were filed to the date of their settlement, AHR similarly remained the Debtor's largest creditor. The Wilton Settlement was a reasonable alternative towards the satisfaction of AHR's claim. Based on the billing summary in the Application, under the applicable sections of the Bankruptcy Code, this Court finds fees incurred from Duane Morris's efforts in connection to the Wilton Settlement were reasonable and necessary.

**D. Preference Actions Against the Debtor and His Trade Creditors**

Duane Morris's pursuit of various preference actions was necessary to the administration of the Debtor's case and "reasonably likely to benefit the debtor's estate" at the time they were rendered. Top Grade Sausage, 227 F.3d at 132. Shortly after its retention, Duane Morris initiated discussions with the Trustee regarding potential fraudulent transfers between the Debtor and third-parties. See Doc # 230, Ex. A. From 2017 to 2019, Duane Morris engaged in constant communication with the Trustee, the Debtor's counsel, and defendants' counsel regarding the status of those actions. Doc. # 230, Ex. A. This Court will not rely on the benefit of hindsight to

---

[5] The Wilton Settlement allowed the Wilton Claims as general unsecured claims against the Wilton Estate. See Bankr Case No. 16-16779, Doc. # 113. Under the Settlement, AHR would receive 75% and Trustee would receive 25% of any distributions made to Wilton claim number 10-1. Id.

A-13

assess whether the success, or possible lack thereof, renders the services in furtherance of a preference action compensable or not. See Grasso, 586 B.R. at 144; see also Hosp. Partners of Am., 597 B.R. at 769 (finding the pursuit of preference actions are not per se incompensable because the total recovery are less than the amount counsel billed). At the time each preference action was commenced, Duane Morris and the Trustee could reasonably believe that their success would recover significant funds for the benefit of the Debtor's estate.

AHR also objects to the work completed by Duane Morris after the final preference action was closed. See Doc. # 234, Ex. 5. AHR argues that no services billed after the close of the final preference action were reasonable or necessary. However, a final resolution in an adversary proceeding does not foreclose a professional from recovering for continued, necessary services in relation to that proceeding. AHR points to a fee schedule of the unnecessary services rendered by Duane Morris between 2019 to 2023. Doc. # 234, Ex. 5. Of the fees listed on that schedule, Duane Morris billed $954.00 for its professional services. Doc. # 234, Ex. 5. None of the time entries exceed three tenths of an hour. Doc. # 234, Ex. 5. Further, the contested entries are for services such as reviewing an order entered by this Court or discussing substantive matters related to the administration of this case with the Trustee and the Debtor's counsel. Doc. # 234, Ex. 5. This Court need not determine whether such services are for the benefit of the estate under 11 U.S.C. §330(a). After reviewing the specific time entries AHR disputes, this Court finds Duane Morris spent reasonable time on those matters and charged a reasonable rate.

### E. Duane Morris's Fees & Rates

As stated, the Debtor's case was far from a simple Chapter 7 proceeding. The complexity of issues, both factual and legal, would require any Chapter 7 trustee to retain competent counsel. Upon review, the Court finds the rates charged by Duane Morris to be reasonable and necessary.

A-14

Seven (7) professionals from Duane Morris rendered services on behalf of the trustee. Duane Morris billed 395.50 hours with attorney rates between $465.00 to $1,045.00 per hour. Doc. # 230, Ex. A. Duane Morris's senior counsel, Lawrence J. Kotler, billed 43.94% of his firm's hours at rates between $715.00 to $1,045.00 per hour. Doc. # 230. Mr. Kotler's $715.00 per hour rate was approved at the time of his firm's retention. Doc. # 46. Mr. Kotler's services billed at those rates included the preparation and procurement of the North Mill Settlement, Wilton Settlement, sale of the Debtor's real property and Mercedes-Benz, preference actions, and various other communications essential to the Trustee's administration of this case.[6] See Doc. # 230, Ex. A. Mr. Kotler is board certified by the American Board of Certification in Business Bankruptcy Law and a fellow for the American College of Bankruptcy. Aside from the fees discussed in the subsequent sub-section, Duane Morris at no time billed the estate for duplicate services not likely to benefit the estate or necessary to its administration. See 11 U.S.C. §330(a)(4). In fact, this case was unlikely to have progressed in the fashion it did but-for the proactive approach taken by Duane Morris. See Doc. # 230, Ex. A.

AHR fails to point to a local rule or other legal authority which caps the rate that counsel may charge.[7] Such a practice or rule would impair the Court's ability to use the standards set forth in the statute for reviewing compensation applications. Section 330(a)(3) specifically requires the court to consider the attorney's qualifications as well as the customary compensation charged by attorneys with like qualifications in non-bankruptcy cases when determining the reasonable fee to

---

[6] Duane Morris further negotiated and entered into a stipulation with the Wilton Trustee, AHR, and Wilton in which the Trustee and the Wilton Trustee would abandon claims against Gordon Brothers Commercial & Industrial LLC ("Gordon Brothers") and its affiliates—in addition to separate claims against other third-parties—for fraudulent transfers and related causes of action in favor of AHR. See Bankr. Case No. 16-16779, Doc. # 159; Aug. 22 Transcript at 13-14. Under the agreement, AHR's recoveries against Gordon Brothers, or other parties, are deducted from its claim against the Debtor's and Wilton Estates. See Bankr. Case No. 16-16779, Doc. # 159.

[7] AHR provided this Court with affidavits containing the rates of separate attorneys practicing in this District. See Doc. # 234, Ex. 24, 25. While these rates were lower than those of Duane Morris, AHR does not contend that those attorneys have performed comparable Trustee work in this District. Aug. 22 Transcript at 25.

A-15

Case 2:23-cv-04452-MRP   Document 7   Filed 01/19/24   Page 80 of 86

Case 16-15037-pmm   Doc 250-2   Filed 11/09/23   Entered 11/09/23 14:49:14   Desc
Exhibit #12  Opinion Appealed From Nov 2 2023   Page 17 of 18

Case 16-15037-pmm   Doc 246   Filed 11/02/23   Entered 11/02/23 12:49:31   Desc Main
Document   Page 16 of 17

be awarded. A cap on the rate charged for representation in bankruptcy would not only ignore this section of the statute but also set a dangerous precedent which may deter competent counsel from taking such cases. This Court will continue to assess a professional's rates under the framework set forth in 11 U.S.C. §330(a).

### F. Preparation of the Application

Turning to Duane Morris's preparation of its Application, fees will only be awarded for services incurred for the benefit of the estate. Baker Botts L.L.P. v. ASARCO LLC, 576 U.S. 121, 135 S. Ct. 2158, 192 L. Ed. 2d 208 (2015); In re Nilhan Devs., LLC, 2021 Bankr. LEXIS 266, at *18 (Bankr. N.D. Ga. Feb. 4, 2021); In re Stanton, 559 B.R. 781, 784-85 (Bankr. M.D. Fla 2016). Accordingly, the Chapter 7 Trustee's counsel may not recover services rendered for their own benefit or that were purely administrative. In this instance, not all of Duane Morris's fees in preparing its Application are inherently compensable. See In re Computer Learning Ctrs., Inc., 285 B.R. 191, 219 (Bankr. E.D. Va. 2002) ("[Not] every aspect of preparing a fee application is compensable.").

The filing of Duane Morris's Application was necessary to the administration of the Debtor's estate and was a service rendered on behalf of the Trustee. See E.g., In re China Fishery Grp. Ltd., 2023 Bankr. LEXIS 207, at *158-59 (Bankr. S.D.N.Y. Jan. 27, 2023) (noting that "[s]ection 330(a)(6) permits recovery of reasonable fees for the preparation of fee applications."). Duane Morris billed 4.50 hours for the preparation of its Application at a rate of $465.00 per hour for a total of $2,092.50. Doc. # 230, Ex. A. Duane Morris's efforts in drafting and filing its Application were reasonable and necessary legal work for the benefit of the estate.

However, Duane Morris also billed 3.50 hours for the review of its billing entries and its more junior counsel's preparation of the Application. Duane Morris charged $1,045.00 per hour

A-16

for a total of $3,657.50 for the review of its Application.  Reviewing another attorney's time records is purely administrative. Although part of this review included an effort to trim fees which would in turn benefit the estate by reducing Duane Morris's administrative claim, billing said time at the highest billing rate does much to undermine such a benefit.

Accordingly, Duane Morris has failed to meet is burden in showing that the $3,657.50 for the review of its Application was reasonable or necessary. While Duane Morris may have cut other fees in its review, the rate used to bill said time is unreasonable and will therefore be disallowed.

### VII. CONCLUSION

Based upon the foregoing, this Court will allow compensation of $216,776.50 and reimbursement of expenses of $11,267.36 for a total award of $228,043.86 to Duane Morris under its Application. An order will follow.

Date:  November 2, 2023

_Patricia M. Mayer_

**PATRICIA M. MAYER**
**U.S. BANKRUPTCY JUDGE**

A-17

Case 2:23-cv-04452-MRP   Document 7   Filed 01/19/24   Page 82 of 86
Case 16-15037-pmm   Doc 250-1   Filed 11/09/23   Entered 11/09/23 14:49:14   Desc
Exhibit #1  Order entered Nov 2 2023   Page 2 of 2
Case 16-15037-pmm   Doc 247   Filed 11/02/23   Entered 11/02/23 13:06:29   Desc Main
Document   Page 1 of 1

## UNITED STATES BANKRUPTCY COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re:                                    :        **Chapter 7**
                                          :
Ivan L. Jeffery,                          :        **Case No.   16-15037 (PMM)**
                                          :
           Debtor.                        :

---

## ORDER ACCOMPANYING OPINION

**AND NOW**, this 2nd day of November 2023, upon consideration of the Application of

Duane Morris LLP, as counsel for the Chapter 7 Trustee, for allowance of compensation in the

amount of $220,000.00 and reimbursement of expenses of $11,267.36 (Doc. # 230), Artesanias

Hacienda Real S.A. de C.V.'s objection thereto (Doc. # 234), the parties' arguments at a hearing,

and for the reasons stated in the accompanying Memorandum Opinion;

           It is hereby **ORDERED** that:

   1. The Application is **GRANTED IN PART AND DENIED IN PART**.

   2. Compensation in the amount of $216,776.50 and reimbursement of expenses of

      $11,267.36 are allowed to Duane Morris LLP as counsel to the Chapter 7 Trustee for

      the period of August 15, 2016 through June 30, 2023.

**Date: November 2, 2023**

                                          *Patricia M. Mayer*

                                          **PATRICIA M. MAYER**
                                          **U.S. BANKRUPTCY JUDGE**

A-18

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re: **IVAN L. JEFFERY,** | : **Chapter 7** |
| **Debtor** | : **Case No. 16-15037-PMM** |
| _____ | : |

<u>**NOTICE OF APPEAL**</u>

<u>**Part 1: Identify the appellant(s)**</u>

1. *Name of appellant:*  Artesanias Hacienda Real S.A. de C.V.

2. *Position of appellant in the adversary proceeding or bankruptcy case that is the subject of this appeal*:  Appellant is a judgment creditor of debtor Ivan L. Jeffery, and thus a party in interest.  Appellant has opposed an excessive fee application of the Chapter 7 Trustee's counsel, the Duane Morris law firm.

 Appellant previously appealed a prior Opinion and Order of that Bankruptcy Court in Appellant's related adversary action to deny debtor Ivan L. Jeffery discharge (*Artesanias Hacienda Real S.A. de C.V. v. Ivan L. Jeffery*, Adv. No. 17-028-PMM in Chapter 7 Case, *In re Ivan L. Jeffery*, 16-15037-PMM).  That appeal is currently pending in the U.S. District Court for the Eastern District of Pennsylvania, Case No. 23-cv-02406-KNS.

<u>**Part 2: Identify the subject of this appeal**</u>

1. *Describe the judgment, order, or decree appealed from:*

Plaintiff appeals the Order [Doc. 247, copy attached as Exhibit 1 hereto] and related Opinion [Doc. 246, copy attached as Exhibit 2 hereto], including without limitation each and every provision thereof.

2. *State the date on which the judgment, order, or decree was entered:*

The Order [Doc. 247] and the Opinion [Doc. 246] were both entered on November 2, 2023.

1

A-19

**Part 3: Identify the other parties to the appeal**

*List the name of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their attorneys:*

1. Party in interest (judgment creditor)/appellant: ARTESANIAS HACIENDA REAL S.A. de C.V.
    Attorney for party-in-interest (judgment creditor)/appellant:
        BARRY L. GOLDIN, ESQ.
        3744 Barrington Drive,
        Allentown, PA 18104-1759
        Tel: 610-336-6680  Fax: 610-336-6678
        Email: barrygoldin@earthlink.net

2. Appellee Chapter 7 Trustee Lynn E. Feldman and her counsel Duane Morris
    Attorneys for Chapter 7 Trustee Feldman:
        Duane Morris, Attn: Larry Kotler, Esq.
        30 South 17th Street
        Philadelphia, PA 19103-4196
        Tel: 215-979-1514 Fax: 215-689-2746
        Email: trustee.feldman@rcn.com and ljkotler@juanemorris.com

3. Party in interest/creditor LEPCO:
    Attorneys for LEPCO:
        Blakinger Thomas, Attn: Susan P. Peipher, Esq.
        28 Penn Square
        PO Box 1889
        Lancaster, PA 17608-1889
        Tel: 717-509-7239  Fax: 717-299-9529
        Email: spp@blakingerthomas.com

4. Debtor/appellee: IVAN L. JEFFERY
    Attorneys for debtor Ivan L. Jeffery
        Barley Snyder, Attn: Joshua L. Schwartz, Esq.
        2755 Century Boulevard
        Wyomissing, PA 19610
        Tel: 510-372-3500
        Email: jschwartz@barley.com

Attachments to this Notice of Appeal:

    Exhibit 1 –Order appealed from entered November 2, 2023 [Dkt. 247]

    Exhibit 2 – Opinion appealed from entered November 2, 2023 [Dkt. 246]

A-20

Respectfully Submitted

Date: November 9, 2023        /s/Barry L. Goldin
                             BARRY L. GOLDIN, ESQ.
                             3744 Barrington Drive,
                             Allentown, PA  18104-1759
                             Tel: 610-336-6680  Fax: 610-336-6678
                             Email: barrygoldin@earthlink.net
        *Attorney for Party-in-Interest/Appellant Artesanias Hacienda Real S.A. de C.V.*

HAC031104.1NAPPDMFEES

A-21

Case 2:23-cv-04452-MRP   Document 7   Filed 01/19/24   Page 86 of 86

Case 16-15037-pmm   Doc 250-3   Filed 11/09/23   Entered 11/09/23 14:49:14   Desc
Service List Certificate of Service   Page 1 of 1

## CERTIFICATE OF SERVICE

I hereby certify that on the date set forth below, I cased the "Notice of Appeal" of party-in-interest/appellant Artesanias Hacienda Real S.A. de C.V. and the exhibits thereto to be electronically filed on the Court's CM/ECF system and through that system served on all persons who are deemed to have consented to electronic service or notice of the document under (among other things) Local Bankruptcy Rules 5005-2 and 5005-5. I also caused said documents to be served electronically on counsel for Larry Kotler, Esq., counsel for Chapter 7 Trustee Lynn E. Feldman.

Dated: November 9, 2023          /s/Barry L. Goldin_____
                                 Barry L. Goldin, Esquire

HAC031104.1NAPPPDMFEES

A-22