IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | |
| | : | Civil Action No. 2:23-cv-04452-MRP |
| IVAN L. JEFFERY, | : | |
| Debtor. | : | |
| | : | Bankruptcy No. 16-15037-pmm |
| | : | |

**MEMORANDUM**

**Perez, J.**                                                                                                                 **September 3, 2025**

This is an appeal from a final order of the United States Bankruptcy Court for the Eastern District of Pennsylvania. The Bankruptcy Court approved, with a minor reduction, Duane Morris LLP's final fee application for services rendered as counsel to the Chapter 7 trustee in the bankruptcy case of Ivan L. Jeffery. The court awarded $216,776.50 in fees and $11,267.36 in expenses, reducing the requested compensation by $3,657.50 on the ground that time billed for reviewing the firm's own fee application was not compensable. The appellant, Artesanias Hacienda Real S.A. de C.V., objects on multiple grounds, including that the fees were excessive, duplicative, and not justified by the results obtained. For the reasons that follow, the Bankruptcy Court's order will be affirmed.

I.     BACKGROUND AND PROCEDURAL HISTORY

Debtor Ivan L. Jeffery filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on July 15, 2016.[1] Shortly thereafter, Lynn E. Feldman was appointed as the Chapter 7 trustee.[2] With court approval, the Trustee retained the law firm Duane Morris LLP

---

[1] ECF No. 1-1 at 31.
[2] *Id.*

("Duane Morris") as her counsel, effective August 15, 2016. At the point of retention, Duane Morris's billing rates ranged from $315 to $715 per hour, and no party objected to the retention, including the appellant, Artesanias Hacienda Real S.A. de C.V. ("Artesanias")[3].

Debtor Jeffery was formerly the principal of Winton Armetale, Inc. a/k/a WAPITA, Inc. ("Winton"), which filed a separate voluntary petition for Chapter 7 bankruptcy in September 2016.[4] The two bankruptcies (Jeffery and Winton) had overlapping creditors, including Artesanias, which was the largest creditor in Jeffery's estate.[5] Another creditor, North Mill Capital, held claims in both cases, and a third creditor (LEPCO) had a claim only in Jeffery's case.[6]

Over the next seven years, Duane Morris, on the Trustee's behalf, pursued asset sales and litigation in both the Jeffery and Winton cases. This was not a routine Chapter 7 matter involving simple liquidation; rather, the cases presented interrelated issues and competing interests, requiring significant balance and coordination by Duane Morris.[7] For example, Duane Morris assisted the Trustee in selling Jeffery's Pennsylvania residence and car.[8] Those assets had been leased out to third parties pre-petition, and the lessees refused to surrender possession of the assets after Jeffery's bankruptcy filing.[9] Duane Morris joined in successful legal motions to compel the tenants to turn over the house and car to the estate, the sale of which yielded approximately $105,985 for the estate.[10]

---

[3] *Id.*
[4] *Id.*
[5] *Id.* at 42.
[6] *Id.* at 31.
[7] *Id.* at 38-39.
[8] *Id.* at 41.
[9] *Id.* at n.12.
[10] *Id.* at 41.

Duane Morris also initiated and settled multiple adversary proceedings on the estate's behalf, primarily pursuing preference and fraudulent transfer actions.[11] These efforts yielded $358,535.22 in recoveries.[12] In addition, Duane Morris filed proofs of claim on behalf of Jeffery's estate in the Winton bankruptcy, positioning the estate as a major creditor.[13] This led to a negotiated settlement with the Winton trustee under which one of Jeffery's claims was allowed and the distribution on that claim was allocated 75% to Artesanias and 25% to the Jeffery estate.[14] Duane Morris also played a role in resolving a secured claim by North Mill Capital, which ultimately withdrew its asserted $1.3 million claim against the Jeffery estate following settlements in the Winton case.[15]

On July 7, 2023, Duane Morris filed its first and final fee application seeking $220,000 in compensation and $11,267.36 in reimbursement of expenses, reflecting approximately 395.5 hours of work at rates ranging from $305 to $1,045 per hour.[16] Artesanias objected on the grounds that the fees were excessive, duplicative of the trustee's statutory duties, and disproportionate to the estate's benefit.[17] Following an evidentiary hearing held on August 22, 2023[18], the bankruptcy court issued a written opinion on November 2, 2023, approving $216,776.50 in fees and the full requested amount of expenses.[19] The court disallowed $3,657.50 in time billed at $1,045 per hour for reviewing the firm's own billing entries, but otherwise found Duane Morris's services to be

---

[11] *Id.* at 34.
[12] *Id.*
[13] *Id.* at 42.
[14] *Id.* at n.5.
[15] *Id.* at 39-40.
[16] *Id.* at 31-32
[17] *Id.* at 32-35.
[18] *Id.* at 32.
[19] *Id.* at 46.

reasonable, necessary, and beneficial to the estate under 11 U.S.C. § 330.[20] AHR timely appealed that judgment to the district court.[21]

## II.    LEGAL STANDARD

This Court has appellate jurisdiction over final judgments and orders of bankruptcy courts under 28 U.S.C. § 158(a). On appeal, a district court reviews the bankruptcy court's conclusions of law *de novo*, its factual findings for clear error, and its discretionary determinations (including the approval of professional fees) under an abuse of discretion standard. *In re Top Grade Sausage, Inc.*, 227 F.3d 123, 125 (3d Cir. 2000); *Zolfo, Cooper & Co. v. Sunbeam-Oster Co.*, 50 F.3d 253, 257 (3d Cir. 1995). A factual finding is clearly erroneous when the reviewing court is "left with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City*, 470 U.S. 564, 566 (1985). Likewise, abuse of discretion can occur if the judge "fails to apply the proper legal standard or to follow proper procedures in making the determination, or bases an award upon findings of fact that are clearly erroneous." *Zolfo*, 50 F.3d at 257 (quoting *Hatcher v. Miller* (*In re Red Carpet Corp.*), 902 F.2d 883, 890 (11th Cir. 1990)).

Section 330(a)(1) of the Bankruptcy Code permits a court to award "reasonable compensation for actual, necessary services" provided by professionals employed under § 327. In determining reasonableness, courts consider a number of factors, including the time spent, the rates charged, the necessity and benefit of the services rendered, and customary compensation for similar services outside bankruptcy. 11 U.S.C. § 330(a)(3). Services that are duplicative, not necessary, or not reasonably likely to benefit the estate may not be compensated. § 330(a)(4)(A). Courts are not required to conduct a line-by-line review of time entries so long as they apply

---

[20] *Id.* at 37, 46.
[21] ECF No. 1.

4

reasoned judgment based on the record. *In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 846–47 (3d Cir. 1994).

### III. DISCUSSION

On appeal, Artesanias raises several challenges to the bankruptcy court's order awarding fees and expenses to Duane Morris. First, it argues that the court failed to apply the proper legal standard under 11 U.S.C. § 330 and erroneously placed the burden of proof on Artesanias, rather than on Duane Morris, to justify the requested compensation.[22] Second, Artesanias contends that the hourly rates charged by Duane Morris were unreasonably high in light of the local market and not justified by any "special skill".[23] Third, it asserts that many of the services performed were unnecessary or duplicative of duties statutorily assigned to the Chapter 7 Trustee, including work on the sale of the debtor's house and car.[24] Fourth, Artesanias challenges the allowance of fees for Duane Morris's efforts to recover from the Wilton estate, asserting that these actions were destined from the outset to yield a net loss to the estate.[25] Fifth, it argues that Duane Morris failed to provide a required accounting of funds in the Chapter 7 estate.

#### A. The Bankruptcy Court Applied the Correct Legal Standard

Artesanias's contention that the Bankruptcy Court applied the wrong legal framework in evaluating Duane Morris's fee application is without merit. The bankruptcy court expressly cited and applied 11 U.S.C. § 330(a)(1), (a)(3), and (a)(4), and considered each of the statutory factors. The court acknowledged its independent obligation to review the fee application regardless of objections and cited the Third Circuit's guidance in *In re Busy Beaver Building Centers, Inc.*, 19

---

[22] ECF No. 7 at 4-7, 13-16.
[23] *Id.* at 5, 13-15.
[24] *Id.* at 3-4, 6-8.
[25] *Id.* at 6, 18-20, 34-36.

F.3d 833 (3d Cir. 1994), which instructs bankruptcy judges to assess reasonableness independently of any party's views.[26]

The court applied the correct legal standard by evaluating the necessity and reasonableness of services at the time they were rendered, not in hindsight. *See In re Top Grade Sausage, Inc.*, 227 F.3d 123, 132 (3d Cir. 2000). It employed the "lodestar" methodology of calculating fees by multiplying reasonable hours by reasonable rates, and made a detailed, record-based assessment of whether the services provided actual or reasonably likely benefit to the estate. *See Busy Beaver*, 19 F.3d at 849, 856.

The court's opinion reflects a careful application of § 330(a)(3), addressing the time and labor required, the complexity of the case, the skill level involved, and the customary compensation for comparable work. It separately considered whether any services were unnecessary or unreasonably duplicative, consistent with § 330(a)(4)(A), and expressly rejected the argument that it should evaluate the benefit of services based solely on final monetary results. The Bankruptcy Court's analysis satisfies the standards set by the Third Circuit and demonstrates that it exercised independent judgment, not deference to the applicant. Its findings are supported by the record and entitled to deference on appeal.

### B. The Bankruptcy Court's Findings of Complexity and Necessity Were Not Clearly Erroneous

The court did not err in rejecting Artesanias's argument that the case involved a routine liquidation. Contrary to Artesanias's characterization of this matter as a routine Chapter 7 liquidation, the Bankruptcy Court found that the case was unusually complex and legally

---

[26] ECF No. 1 at 36.

demanding.[27] That finding of fact is reviewed for clear error, and none has been shown here. The court noted that the estate involved interlocking legal and financial issues between two related Chapter 7 proceedings: Jeffery's individual case and the bankruptcy of his former company, Winton Armetale, Inc.[28] Both cases shared overlapping creditors and required coordination to avoid duplicative recovery or inconsistent claim treatment.

In addition to those structural complications, the estate encountered active resistance from third-party lessees who refused to surrender Jeffery's residence and vehicle, both of which had been leased out prepetition. The Trustee, with assistance from Duane Morris, was required to litigate to compel turnover. These were not simple asset sales, but rather involved adversarial proceedings, legal briefing, and court orders. The court also cited ongoing disputes with secured and unsecured creditors, including persistent litigation activity by Artesanias itself, as contributing to the overall complexity.[29] These findings are grounded in the docket and the billing records and clearly surpass the threshold for clear error.

### C. The Bankruptcy Court Acted Within its Discretion in Approving Duane Morris's Hourly Rates

Artesanias's challenge to Duane Morris's hourly billing rates does not justify reversal. Artesanias contends that Duane Morris's rates, particularly the senior attorney's rate of up to $1,045 per hour, were excessive and out of step with prevailing rates in the Reading and Allentown markets. However, the Bankruptcy Court carefully reviewed this objection and concluded that the rates were reasonable in light of the firm's qualifications, the nature of the services rendered, and the voluntary discounts already applied.[30]

---

[27] *Id.* at 39.
[28] *Id.* at 40.
[29] *Id.* at 39.
[30] *Id.* at 42-43.

The court further found that the attorneys identified by Artesanias in its rate comparison affidavits had not handled comparable work; namely, long-term litigation across dual bankruptcy estates on behalf of a Chapter 7 trustee.[31] Section 330(a)(3)(F) requires courts to consider "customary compensation charged by comparably skilled practitioners," not simply average local rates. The Bankruptcy Court's finding that the rates were justified on this record was reasonable and does not reflect an abuse of discretion.

### D. The Bankruptcy Court Reasonably Concluded that Legal Services Related to Asset Recovery Were Compensable

Artesanias argues that Duane Morris should not have been compensated for its work assisting in the sale of the debtor's house and car, which it claims were the trustee's duties under 11 U.S.C. § 704(a)(1). While it is true that a Chapter 7 trustee is responsible for collecting and reducing estate property to money, courts have distinguished between routine sales and those requiring legal action due to dispute or resistance. *See In re J.W. Knapp Co.*, 930 F.2d 386, 388 (4th Cir. 1991). Here, the assets were held by third-party lessees who actively refused to surrender possession after the petition date, necessitating turnover motions and court enforcement.[32]

The court found that Duane Morris's role was essential to recovering those assets and ultimately enabled the estate to realize more than $105,000 from their sale. The services performed were not ministerial or duplicative, and the trustee could not have effectuated the turnover without legal assistance. These findings are factual and well-supported. The court's decision to approve fees for this work reflects a proper application of § 330(a)(4)(A) and was not an abuse of discretion.

---

[31] *Id.* at 44 at n.7
[32] *Id.* at 44-45.

### E. The Bankruptcy Court's Allowance of Fees for Services Related to the Winton Bankruptcy was not an Abuse of Discretion

Although Artesanias characterizes Duane Morris's pursuit of claims in the Winton case as a net loss, the Bankruptcy Court properly evaluated those services based on their reasonable likelihood of benefiting the estate at the time they were performed. The record shows that Duane Morris filed proofs of claim on behalf of the Jeffery estate in the Winton proceeding and negotiated a settlement that allowed one of those claims and provided for a 25% distribution to the Jeffery estate and a 75% distribution to Artesanias.[33] That agreement, though modest in return, conferred measurable value on the estate and also reduced the claim Artesanias could assert in Jeffery's case.

While Artesanias emphasizes the disparity between the $28,913.50 in fees incurred and the $5,572.04 ultimately recovered, that hindsight-based framing is inconsistent with § 330. The court found that the claims had legitimate value at the time pursued and were resolved through reasonable means. Moreover, the record reflects that Duane Morris's Winton-related efforts contributed to the resolution of other claims, including the withdrawal of North Mill Capital's $1.3 million secured claim.[34] On this record, the Bankruptcy Court's approval of fees for the Winton work was well within its discretion.

### F. The Bankruptcy Court Appropriately Reduced Fees for Time Spent Reviewing the Fee Application

Finally, Artesanias' challenges time entries related to the preparation and review of Duane Morris's own fee application were adequately addressed by the Bankruptcy Court. The court sustained this objection in part, disallowing 3.5 hours billed at $1,045/hour for reviewing time entries, which it found to be administrative in nature and not compensable under § 330.[35] However,

---

[33] *Id.* at 45-46.
[34] *Id.* at 38.
[35] *Id.* at 46.

the court allowed 4.5 hours billed by a junior associate at $325/hour for preparing the application, consistent with § 330(a)(6), which permits reasonable compensation for fee application work.

This result reflects the Bankruptcy Court's careful, entry-specific review of the fee application and its willingness to disallow compensation where appropriate. It also undercuts Artesanias's broader assertion that the court merely "rubber-stamped" the fee request. No error of law or abuse of discretion has been shown.

## IV.   CONCLUSION

For the foregoing reasons, the Court finds that the Bankruptcy Court applied the correct legal standards under 11 U.S.C. § 330, conducted a thorough and independent review of Duane Morris LLP's fee application, and made factual findings supported by the record. Its determinations regarding the necessity, reasonableness, and value of the services rendered were not clearly erroneous, and its decision to approve the requested compensation (subject to a targeted reduction) did not constitute an abuse of discretion. Accordingly, the Bankruptcy Court's November 2, 2023 order awarding Duane Morris $216,776.50 in fees and $11,267.36 in expenses is affirmed.

BY THE COURT:

_____
Hon. Mia R. Perez